NO. 4-00-0524

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE CITY OF SPRINGFIELD, ILLINOIS, ) Appeal from

a Municipal Corporation, ) Circuit Court of

Plaintiff-Appellant, ) Sangamon County

) No. 99MR402

JUDITH JONES DIETSCH TRUST; JUDITH ) 

JONES DIETSCH, Personally and as )

Trustee of the Judith Jones Dietsch )

Trust; and THE VILLAGE OF CHATHAM, ) Honorable

an Illinois Municipal Corporation, ) Dennis L. Schwartz,

Defendants-Appellees. ) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

We must determine whether the City of Springfield or the Village of Chatham has jurisdiction to regulate the subdivision of property that is contiguous to Springfield and within its statutory planning jurisdiction but subject to a conflicting annexation agreement between the property owner and Chatham.  Like the trial court, we find that Chatham has the power to regulate the use of the property at issue and affirm summary judgment in favor of the defendants.  

In 1988, Springfield adopted a comprehensive land development plan pursuant to the Illinois Municipal Code (Municipal Code) (65 ILCS 5/1-1-1 through 11-152-4 (West 1998)), which extended Springfield's planning jurisdiction to unincorporated contiguous land within 1.5 miles of Springfield's corporate limits.  65 ILCS 5/11-12-5 (West 1998) (any municipality may adopt development plan applicable to contiguous land within 1.5 miles of municipality's corporate limits and not included in any other municipality).  The Judith Jones Dietsch Trust (owner) owns a 36-acre tract of land near Chatham Road on County Highway 40 in unincorporated Sangamon County, Illinois.  The property is contiguous to Springfield's corporate limits.  The property is not contiguous to Chatham's corporate limits, but Chatham provides municipal services to this area.  Traveling by land over unincorporated property and around a portion of Lake Springfield, the property is 1.8 miles from Chatham.  However, the straight-line distance to the property, traversing the lake, is between .25 and .6 miles from Chatham's corporate limits.  

In 1998, the property owner decided to develop the property and sell lots for single-family residences.  The owner did not submit the subdivision plans to Springfield for review.  Instead, the owner entered into an annexation agreement with Chatham pursuant to the Municipal Code.  65 ILCS 5/11-15.1-1 (West 1998) (municipality may enter into annexation agreement with owners of unincorporated property, providing for control of the property and contemplating future annexation when land becomes contiguous to the municipality).  Chatham approved a preliminary plan for subdividing the property.  The owners then proceeded with the development and began marketing the lots.  The subdivision plans contained minor deviations from Springfield's subdivision requirements, but internal City of Springfield documents indicate that the plans were "workable."  

In October 1999, Springfield filed a complaint seeking declaratory and injunctive relief against the Judith Jones Dietsch Trust, Judith Jones, personally and as trustee of the Judith Jones Dietsch Trust, and the Village of Chatham (collectively referred to as defendants).  The suit specifically sought (1) a declaration that Springfield had statutory jurisdiction to regulate the subdivision of property within 1.5 miles of its corporate limits and (2) to enjoin the defendants from proceeding with the development of a subdivision contiguous to Springfield's corporate boundary under the defendants' annexation agreement.  

In April 2000, Chatham filed a motion for summary judgment, arguing that the Municipal Code gave it subdivision and zoning jurisdiction over the property by virtue of the annexation agreement.  Springfield then filed a cross-motion for summary judgment, arguing that Springfield had statutory jurisdiction to apply its land subdivision ordinance to property that is contiguous to Springfield's boundary, within Springfield's planning jurisdiction, and more than 1.5 miles from Chatham.

On June 1, 2000, the trial court issued an order granting Chatham's motion for summary judgment and denying Springfield's cross-motion for summary judgment.  The trial court held that Chatham's annexation agreement prevailed over Springfield's ability to regulate land use within 1.5 miles of its boundary.  We review the trial court's decision 
de
 
novo
.  

Resolution of the issue before us depends upon the interpretation of the Municipal Code.  Since municipalities are creatures of statute, they have no jurisdiction beyond their corporate boundaries unless that jurisdiction is conferred by the legislature.  
Petterson v. City of Naperville
, 9 Ill. 2d 233, 243, 137 N.E.2d 371, 377 (1956).  Thus, extraterritorial jurisdiction of a municipality is strictly controlled by statute.  See  
City of Carbondale v. Van Natta
, 61 Ill. 2d 483, 485-86, 338 N.E.2d 19, 21 (1975).

An examination of the Municipal Code shows that the legislature has granted extraterritorial jurisdiction in limited circumstances.  Defendants note in their brief that such jurisdiction has been granted in only seven instances, including the two that are at issue here.

Section 11-12-5 allows a municipality with a comprehensive development plan to exercise jurisdiction over subdivisions up to 1.5 miles outside of its corporate limits.  That section provides:

"Every plan commission and planning department authorized by this division 12 has the following powers ***:

(1) To prepare and recommend to the corporate authorities a comprehensive plan for the present and future development or redevelopment of the municipality.  Such plan may be adopted in whole or in separate geographical or functional parts, each of which, when adopted, shall be the official comprehensive plan, or part thereof, of that municipality.  This plan may include reasonable requirements with reference to streets, alleys, public grounds, and other improvements hereinafter specified.  
The
 
plan
, 
as
 
recommended
 
by
 
the
 
plan
 
commission
 
and
 
as
 
thereafter
 
adopted
 
in
 
any
 
municipality
 
in
 
this
 
state
, 
may
 
be
 
made
 
applicable
, 
by
 
the
 
terms
 
thereof
, 
to
 
land
 
situated
 
within
 
the
 
corporate
 
limits
 
and
 
contiguous
 
territory
 
not
 
more
 
than
 
one
 
and
 
one-half
 
miles
 
beyond
 
the
 
corporate
 
limits
 
and
 
not
 
included
 
in
 
any
 
municipality
.  Such plan may be implemented by ordinances (a) establishing reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment in respect to public improvements as herein defined ***."  (Emphasis added.)  65 ILCS 5/11-12-5 (West 1998).

Section 11-12-9 permits municipalities to enter into jurisdictional agreements with each other regarding extraterritorial subdivision authority and provides that, absent agreement, the respective jurisdictions meet halfway between their boundaries.  It also provides that there is no intention to limit the power that any municipality has to annex additional territory.

"If unincorporated territory is within one and one-half miles of the boundaries of two or more corporate authorities that have adopted official plans, the corporate authorities involved may agree upon a line which shall mark the boundaries of the jurisdiction of each of the corporate authorities who have adopted such agreement.  On and after September 24, 1987, such agreement may provide that one or more of the municipalities shall not annex territory which lies within the jurisdiction of any other municipality, as established by such line.  
In
 
the
 
absence
 
of
 
such
 
a
 
boundary
 
line
 
agreement
, 
nothing
 
in
 
this
 
paragraph
 
shall
 
be
 
construed
 
as
 
a
 
limitation
 
on
 
the
 
power
 
of
 
any
 
municipality
 
to
 
annex
 
territory
. ***

***

In the absence of such agreement, the jurisdiction of any one of the corporate authorities shall extend to a median line equidistant from its boundary and the boundary of the other corporate authority nearest to the boundary of the first corporate authority at any given point on the line."  (Emphasis added.)  65 ILCS 5/11-12-9 (West 1998).

At all times relevant to this case, Springfield's land subdivision ordinance provided for subdivision jurisdiction to land within 1.5 miles of the corporate limits.  The ordinance also provided that when the 1.5-mile jurisdiction of Springfield and that of another municipality overlapped, jurisdiction would extend to a line equidistant from the corporate boundaries.  For purposes of this case, Springfield argues that the jurisdiction granted to it in section 11-12-5 supersedes Chatham's annexation agreement.

Defendants, on the other hand, argue that, once the annexation agreement was executed, jurisdiction over the property vested in Chatham.  Defendants also assert that the Municipal Code specifically contemplates annexation agreements relating to noncontiguous property.  Defendants cite the annexation agreement provisions in division 15.1 of the Municipal Code in support of their argument.  Section 11-15.1-1 sets forth the parameters of an annexation agreement and provides:

"The corporate authorities of any municipality may enter into an annexation agreement with one or more of the owners of record of land in unincorporated territory.  That land may be annexed to the municipality in the manner provided in [a]rticle [VII] at the time the land is or becomes contiguous to the municipality.  The agreement shall be valid and binding for a period *** not to exceed 20 years from the date of its execution.

Lack
 
of
 
contiguity
 
to
 
the
 
municipality
 
of
 
property
 
that
 
is
 
the
 
subject
 
of
 
an
 
annexation
 
agreement
 
does
 
not
 
affect
 
the
 
validity
 
of
 
the
 
agreement
 
whether
 
approved
 
by
 
the
 
corporate
 
authorities
 
before
 
or
 
after
 
the
 
effective
 
date
 
of
 
this
 
amendatory
 
[a]ct
 
of
 
1990
.

This amendatory [a]ct of 1990 is declarative of existing law and does not change the substantive operation of this [s]ection."  (Emphasis added.)  65 ILCS 5/11-15.1-1 (West 1998).

Section 11-15.1-2.1 grants jurisdiction over the territory to be annexed to the annexing municipality, without regard to whether the property is contiguous, except in Cook County, its collar counties, and the St. Louis metro-east area, where the property must be contiguous for the annexing municipality to assert jurisdiction.  That section states:

"(a) Property that is the subject of an annexation agreement adopted under this [d]ivision 
is
 
subject
 
to
 
the
 
ordinances
, 
control
, 
and
 
jurisdiction
 
of
 
the
 
annexing
 
municipality
 
in
 
all
 
respects
 
the
 
same
 
as
 
property
 
that
 
lies
 
within
 
the
 
annexing
 
municipality's
 
corporate
 
limits
.

(b) This [s]ection shall not apply in (i) a county with a population of more than [3 million], (ii) a county that borders a county with a population of more than [3 million,] or (iii) a county with a population of more than 246,000 according to the 1990 federal census and bordered by the Mississippi River, unless the parties to the annexation agreement have, at the time the agreement is signed, ownership or control of all property that would make the property that is the subject of the agreement contiguous to the annexing municipality, in which case the property that is the subject of the annexation agreement is subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as property owned by the municipality that lies within its corporate limits."  (Emphasis added.)  65 ILCS 5/11-15.1-2.1 (West 1998).

The Municipal Code sections concerning annexation agreements were first enacted in 1963.  Preannexation agreements serve to further important governmental purposes, such as the encouragement of expanding urban areas uniformly, economically, efficiently, and fairly, with optimum provisions made for the establishment of land use controls and necessary municipal improvements.  
Village of Orland Park v. First Federal Savings & Loan Ass'n
, 135 Ill. App. 3d 520, 526, 481 N.E.2d 946, 950 (1985).  Prior to 1989, section 11-15.1-1 lacked explicit provisions allowing annexation agreements with noncontiguous property owners.  Nevertheless, municipalities entered into annexation agreements with noncontiguous property owners, and the developers consented to be bound by the annexing municipality's ordinances.  In 
Village of Lisle v. Action Outdoor Advertising Co.
, 188 Ill. App. 3d 751, 756, 544 N.E.2d 836, 839 (1989), the Second District held such annexation agreements to be illegal.  The court noted that allowing annexation agreements with noncontiguous property owners was improper because: 

"[T]he practical effect of such a finding would authorize a municipality to enter into an annexation agreement for property anywhere within the State and, pursuant to the agreement, exercise its police power over that property.  We do no think such a result was intended by the legislature."  
Village of Lisle
, 188 Ill. App. 3d at 760, 544 N.E.2d at 842.  

Springfield makes the same argument here.  However, we find Springfield's argument lacks merit when viewed in light of the statutory language and legislation after 
Village of Lisle
.

At the outset, we note that courts have no legislative powers and courts may not enact or amend statutes.  
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 394, 712 N.E.2d 298, 305 (1998).  The responsibility for the justice or wisdom of legislation rests upon the legislature.  
Henrich
, 186 Ill. 2d at 394, 712 N.E.2d at 305.  A court must interpret and apply statutes in a manner in which they are written.  A court must not rewrite statutes to make them consistent with the court's idea of orderliness and public policy.  
Henrich
, 186 Ill. 2d at 395, 712 N.E.2d at 305.  

Public Act 86-1169 (Pub. Act 86-1169, §1, eff. January 1, 1991 (1990 Ill. Laws 1612-13)) was enacted less than a year after the 
Village of Lisle
 opinion.  We presume that, in adopting this amendment to the Municipal Code, the legislature was aware of the 
Village of Lisle
 decision stating that the legislature could not have intended to allow annexation of noncontiguous property.  See 
Kozak v. Retirement Board of the Fireman's Annuity & Benefit Fund
, 95 Ill. 2d 211, 218, 447 N.E.2d 394, 398 (1983).  The legislature added the following language to section 11-15.1-1:

"Th[e] land may be annexed to the municipality in the manner provided in [a]rticle [VII] at the time the land is or becomes contiguous to the municipality.  ***

Property that is the subject of an annexation agreement adopted under this [s]ection is subject to the ordinances, control, and jurisdiction of the municipality in all respects the same as property owned by the municipality that lies within its corporate limits.

Lack
 
of
 
contiguity
 to the municipality of property that is the subject of an annexation agreement 
does
 
not
 
affect
 
the
 
validity
 
of
 
the
 
agreement
 whether approved by the corporate authorities before or after the effective date of this amendatory [a]ct of 1990."  (Emphasis added.)  Pub. Act 86-1169, §1, eff. January 1, 1991 (1990 Ill. Laws 1612-13) (as amended, see Ill. Rev. Stat. 1991, ch. 24, par. 11-15.1-1).

In 1993, the second paragraph quoted above was moved to a new section (11-15.1-2.1) of the Code and the special provision mandating contiguity as a condition of jurisdiction in Cook County, the collar counties, and the metro-east area was added because of "predatory" annexation problems in those densely populated areas.  Pub. Act 87-1137, §1, eff. January 1, 1993 (1992 Ill. Laws 3091) (as amended, see 65 ILCS 5/11-15.1-1, 11-15.1-2.1 (West Supp. 1993)).  

Springfield asks us to "harmonize" the provisions in the Municipal Code and find the language granting municipalities planning jurisdiction within 1.5 miles of their boundaries to be more specific, thus superseding the statutory language authorizing annexation agreements with owners of noncontiguous property.  Springfield argues that allowing Chatham's annexation agreement to trump its planning jurisdiction would be "absurd."  Essentially, Springfield asks us to treat Chatham as if it were part of Cook County, the collar counties, or the metro-east area and require that annexation agreements may only be entered with property owners of land contiguous to Chatham.  See 65 ILCS 5/11-15.1-2.1 (West 1998).  Springfield asserts that Chatham is engaging in "predatory annexation" like that which has occurred in the Chicago and metro-east areas.  Clearly, the legislature sought to limit such practices in these highly populated areas.  However, the legislature placed no such limitation on annexation agreements of noncontiguous property in Sangamon County, other than that the property could only be annexed under article VII if it were contiguous and the annexation agreement would expire after 20 years.  Based on our review of the Municipal Code, nothing precluded the execution of the annexation agreement at issue here.

In summary, Springfield points to division 12 of the Municipal Code, dealing with plan commissions, which allows municipalities to plan within 1.5 miles of its limits and to  implement those plans by ordinances establishing reasonable standards of design for subdivisions.  65 ILCS 5/11-12-5 (West 1998).  Defendants, however, rely upon division 15.1 of the Municipal Code, dealing with annexation agreements, which provides that lack of contiguity does not affect the validity of an annexation agreement.  65 ILCS 5/11-15.1-1 (West 1998).  Division 15.1 provides an exception to its restrictions for Cook County, the collar counties, and the metro-east area.  65 ILCS 5/11-15.1-2.1 (West 1998).  The fact there are exceptions indicates the legislature recognized there could be problems with annexation agreements for noncontiguous property.  The fact that none of those exceptions applies to this case, however, is strong evidence that the legislature intended division 15.1 to apply fully to this case.  Division 15.1 also provides that property subject to an annexation agreement is subject to the control of the agreeing municipality in all respects.  65 ILCS 5/11-15.1-2.1(a) (West 1998).  Springfield argues that in determining whether annexation agreements can "trump" its planning and subdivision jurisdiction, we should find the language of division 12 to be more specific, therefore controlling.  There is a paragraph in division 12 that allows municipalities to reach boundary line agreements and provides that, absent such an agreement, the jurisdiction of the municipalities would extend to a line halfway between the two.  65 ILCS 5/11-12-9 (West 1998).  The paragraph goes on to provide, however, that "[i]n the absence of such a boundary line agreement, nothing in this paragraph shall be construed as a limitation on the power of any municipality to annex territory."  65 ILCS 5/11-12-9 (West 1998).  That is pretty broad language.  The legislature has provided for annexation agreements, and we are unable to discern any intent on the part of the legislature to prohibit such agreements where the property is within 1.5 miles of another municipality, with the exception of those counties specifically listed.  See 65 ILCS 5/11-15.1-2.1 (West 1998).  

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.