**CITY OF ALTON, Appellant,**

v.

**CITY OF MISSION, Appellee.**

No. 13–03–324–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

May 26, 2005.

Robinson C. Ramsey, Langley & Banack, San Antonio, for appellant.

Robert L. Galligan, Jones, Galligan, Key & Lozano, Rudy Salinas Jr., Weslaco, for appellee.

Before Justices YANEZ, RODRIGUEZ, and GARZA.

OPINION

Opinion by Justice RODRIGUEZ.

This action for declaratory judgment involves a dispute between two cities regarding the extent of each city's extraterritorial jurisdiction (ETJ). Appellee, the City of Mission (Mission), filed a traditional motion for summary judgment arguing that (1) the ETJ agreement between Mission and appellant, the City of Alton (Alton), was valid and binding and (2) Alton breached that agreement by repealing its ordinance that set out the alleged agreement and by annexing property north of Mile 6 North Road. Alton also filed a traditional summary judgment motion challenging the validity of the respective ordinances and, if valid, the extent and effect of the ordinances that memorialized the agreement.

In its summary judgment, the trial court granted Mission's motion in its entirety declaring: (1) Alton's ordinance 91–05 and Mission's ordinance 1614 constituted a valid and fully enforceable contract between the cities; and (2) Alton's action repealing ordinance 91–05 constituted a breach of contract and was, therefore, void *ab initio*.

The trial court also denied Alton's motion for summary judgment in its entirety and declared that all claims asserted by Alton were denied. The trial court also awarded Mission attorney's fees. All other relief not expressly granted was denied.

By two issues, Alton contends the trial court erred in granting Mission's motion and denying Alton's motion. We affirm.

I. Background

In 1991, Mission and Alton signed ordinances addressing their respective ETJs. Mission signed ordinance 1614 on April 22, 1991. Alton adopted ordinance 91–05 on August 20, 1991. The ordinances mirrored each other. Each provided, in relevant part:

1. The City of Alton's extraterritorial jurisdiction shall not extend south across, nor the City of Mission's extraterritorial jurisdiction north of[,] 4 Mile Line Road, and Alton['s] extraterritorial jurisdiction shall not extend west[,] nor Mission's extraterritorial jurisdiction extend east, of Moorefield Road, and Alton's extraterritorial jurisdiction shall not extend north, nor Mission's extraterritorial jurisdiction extend south, of 6 Mile Line Road. . . .

2. This agreement [hereinafter referred to as the 1991 agreement] shall become effective immediately upon passage of an ordinance entering into said contract passed by both Cities.

In 2001, Alton passed ordinance 2001–11 repealing ordinance 91–05. It also annexed outside the ETJ described in the 1991 ordinances. Subsequently, Mission intervened in an existing lawsuit involving the City of McAllen and Alton. Through its intervention, Mission sought a declaratory judgment that Alton unilaterally breached the 1991 agreement when it repealed ordinance 91–05 and annexed outside its ETJ.

Alton filed a first amended answer and original counterclaim denying Mission's claims and asserting ordinance 91–05 could not and did not abdicate Alton's power to annex property within its ETJ and that, at most, the ordinance governed only subdivision regulations, not annexation; thus, the 1991 agreement, if any, should be declared invalid. Both cities filed motions for summary judgment. Finding that the ordinances constituted a valid and fully enforceable contract between Alton and Mission and that Alton's action of repealing its ordinance constituted a breach of contract and, thus, was void *ab initio*, the trial court granted Mission's motion and denied Alton's motion. The claims filed by the City of McAllen against Alton were severed from the suit. It is from the summary judgment granted in Mission's favor that Alton now appeals.

## II. Standard of Review

Appellate courts review de novo the granting of a traditional motion for summary judgment under Texas Rule of Civil Procedure 166a(c). *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.-Corpus Christi 2003, no pet.); *see* Tex.R. Civ. P. 166a(c). To prevail on summary judgment, a party must conclusively prove all elements of its cause of action or defense as a matter of law. Tex.R. Civ. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). When both sides move for summary judgment and the trial court grants one motion but denies the other, the appellate court should review the summary-

judgment evidence that both sides submitted, determine all questions presented, and render the judgment that the trial court should have rendered. *Holy Cross Church of God in Christ*, 44 S.W.3d at 566.

## III. Analysis

### A. Statutory ETJ

#### 1. Defining ETJ

■ For the purpose of promoting and protecting the general health, safety, and welfare of persons residing in and adjacent to the municipalities, the legislature has designated certain areas as the ETJ of municipalities. *See* Tex. Loc. Gov't Code Ann. § 42.001 (Vernon 1999).[1] Chapter 42 of the local government code establishes the geographical limits of a city's ETJ. *See id.* § 42.021. The geographical limits vary according to the city's population. *See id.* For example, the ETJ of a city with fewer than 5,000 inhabitants, such as Alton in 1991, extends one-half mile from its incorporated area; a city with 25,000 to 49,999 inhabitants, such as Mission in 1991, has a two-mile ETJ; and the ETJ of a city with 100,000 or more inhabitants extends five miles from its corporate boundaries. *See id.* § 42.021(1), (3), (5). A municipality may extend its ETJ beyond those limits to contiguous areas where the owners have requested to be included in the municipality's ETJ. *Id.* § 42.022(b) (describing voluntary ETJ). Moreover, the ETJ of a municipality may be reduced if the governing body of the municipality gives its written consent by ordinance or resolution.[2] *See id.* § 42.023. Section 42.023, however, authorizes only

---

1. On August 23, 1963, ETJ became effective by the adoption of the Municipal Annexation Act. *See* Tex.Rev.Civ. Stat. Ann. art. 970a (Vernon 1963), *repealed by* Acts 1987, ch. 149, sec. 49(1), 1987 Tex. Gen. and Spec. Laws 707, 766, (now located at Tex. Loc. Gov't Code Ann. § 42.001 (Vernon 1999)).

2. An exception to this rule, inapplicable to this case, occurs in cases of judicial apportionment of ETJs that overlapped on August 23, 1963. *See* Tex. Loc. Gov't Code Ann. § 42.901 (Vernon 1999).

the "release" of ETJ; it does not authorize another municipality to automatically "receive" the released area, thereby increasing its ETJ beyond the boundaries specified in section 42.021. *City of Austin v. City of Cedar Park,* 953 S.W.2d 424, 430 (Tex.App.-Austin 1997, no writ).

### 2. ETJ for Annexation Purposes

■ Chapter 43 outlines the procedure for annexation and disannexation by a municipality. *See* TEX. LOC. GOV'T CODE ANN. §§ 43.001–42.904 (Vernon 1999 & Supp. 2004–2005). "A municipality may annex area only in its extraterritorial jurisdiction unless the municipality owns the area." *See id.* § 43.051 (Vernon 1999); *but see City of Murphy v. City of Parker,* 932 S.W.2d 479, 480 (Tex.1996) (ruling section 43.901 bars a municipality's challenge to another municipality's annexation of its extraterritorial jurisdiction if not brought within two years). In chapter 43, "extraterritorial jurisdiction" means ETJ as determined under chapter 42. *See* TEX. LOC. GOV'T CODE ANN. § 43.001 (Vernon 1999) (defining ETJ for annexation purposes).

### 3. ETJ for Subdivision Development

Chapter 212 of the local government code governs a city's authority to regulate subdivisions within its ETJ. *See id.* § 212.002 (providing that governing body of municipality may adopt rules governing plats and subdivisions of land within municipality's jurisdiction to promote health, safety, morals, or general welfare of municipality and safe, orderly, and healthful

development of municipality). A municipality's ETJ under chapter 212 is generally "a municipality's extraterritorial jurisdiction as determined under Chapter 42" of the local government code. *Id.* § 212.001(1). Unlike chapter 43, however, there is an exception to the general rule; the ETJ of a city with a population of 5,000 or more located in a county that borders the Rio Grande is extended to five miles for the purpose of subdivision regulation. *Id.*

### B. Limiting ETJ

#### 1. Validity of Agreement Pursuant to Statute

■ By two issues, Alton challenges the validity of the ordinances to the extent they attempt to limit future ETJ.[3] Alton argues that although it has statutory authority to relinquish existing ETJ, it has no authority to limit ETJ not yet acquired because such limitation would impact its ability to annex new territory. *See id.* § 43.051 (stating municipality may annex area only in its ETJ unless it owns area). However, the legislature allows for the release of existing ETJ, *see* § 42.023, which also limits annexation in certain areas. We are unpersuaded by Alton's argument that limiting future ETJ constitutes an abdication of a municipality's right to annex when limiting or releasing existing ETJ does not.

■ Alton also contends that restricting future ETJ would be void as against public policy because Alton has the duty to pro-

---

3. Alton does not challenge the trial court's judgment to the extent it addresses the release of its existing ETJ. *See* TEX. LOC. GOV'T CODE ANN. § 42.023 (Vernon 1999) (providing ETJ of municipality may be reduced if city gives written consent by ordinance or resolution). Alton also concedes that Mission has authority to assert power to regulate subdivision plats within a five-mile limit of its incorporat-

ed area. *See id.* §§ 212.001–.003 (Vernon 1999 & Supp.2004–2005); *see also id.* § 212.007(a) (Vernon 1999) (stating that municipality with largest population has authority to review and approve plat for tract located in overlapping ETJ). Therefore, Alton is not challenging the judgment as it relates to subdivision development.

tect the public good of its citizens as well as those persons who reside within its ETJ. *See id.* § 42.001 (providing that legislature designated ETJ for purpose of promoting and protecting general health, safety, and welfare of persons residing adjacent to municipalities). Alton asserts that abandonment of statutorily created ETJ in 1991 created a "no man's land" on its municipal boundaries outside of Mission's statutory two-mile ETJ and not subject to Alton's jurisdiction. However, this 1991 agreement is not an abandonment of ETJ, it is an agreement to limit the acquisition of ETJ in the future as areas are annexed. Moreover, Mission urges that determining potential future boundaries for Alton and Mission allows for cities to plan for growth and invest money into a more defined area. Mission asserts that preannexation agreements that limit the expansion of ETJ in the future "further important governmental purposes, such as the encouragement of expanding urban areas uniformly, economically, efficiently, and fairly, with optimum provisions made for the establishment of land use controls and necessary municipal improvements." *See City of Springfield v. Judith Jones Dietsch Trust*, 321 Ill.App.3d 239, 254 Ill. Dec. 224, 746 N.E.2d 1272, 1276 ( [4th Dist.] 2001) (discussing policy behind allowing preannexation agreements with regard to areas that may not be contiguous

to municipality's existing ETJ). While we find no Texas case on point, the legislature has provided for the regulation of plats and subdivision development and, in the case of a city like Mission that has a population of 5,000 or more and is located in a county that borders the Rio Grande, has extended such city's ETJ to five miles for the purpose of subdivision regulation. *See* TEX. LOC. GOV'T CODE ANN. §§ 212.001(1), 212.002 (Vernon 1999) (explaining that governing body of municipality may adopt rules governing plats and subdivisions of land within municipality's jurisdiction to promote health, safety, morals, or general welfare of municipality and safe, orderly, and healthful development of municipality).[4]

■ Chapter 42 of the Texas Local Government Code authorizes municipalities to enter binding ETJ agreements. *See id.* §§ 42.023, 42.041 & 42.901. The sections cited by Mission provide methods by which a municipality may agree to reduce its ETJ, to release its ETJ to allow for the incorporation of another city, and to apportion overlapping ETJ. *See id.* Specific to the facts of this case, pursuant to section 42.023, a municipality may, by written consent, reduce its ETJ as defined in chapter 42 in favor of another municipality. *See City of Murphy*, 932 S.W.2d at 481. By this section, the legislature provided no

4. We do not agree with Mission's independent alternative argument wherein it asserts that pursuant to chapter 212 of the local government code, its statutory ETJ in 1991 was five miles for all purposes. *See* TEX. LOC. GOV'T CODE ANN. § 212.001 (Vernon 1999). Section 212.001 defines ETJ as five miles for municipalities located in a county with a population of 5,000 or more along the Rio Grande, and begins with the words "[i]n this subchapter." *Id.* Therefore, we construe the definition of ETJ in section 212.001 as one applying only to municipal regulation of subdivisions and property development, not to annexation. *See id.* §§ 212.001, 212.042 (provisions of sub-

chapter A not in conflict with subchapter B apply to development plats); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998 & Supp.2004) (to ascertain legislative intent, first look to plain and common meaning of words used by legislature); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex.2002) (same); *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002) (interpreting statutes, a legal matter, is subject to de novo review); *Cont'l Cas. Co. v. Downs*, 81 S.W.3d 803, 805 (Tex.2002) (overriding goal of statutory interpretation is to determine legislature's intent).

limiting language such that the agreements necessarily require the reduced ETJ to be existing ETJ. We conclude, therefore, that a municipality may enter into an agreement to reduce either its existing or its future ETJ.

 This is not to say, however, that upon the reduction of future ETJ another municipality, such as Mission in this case, automatically receives the reduced or released area thereby increasing its ETJ for annexation purposes beyond the boundaries specified in section 42.021. *See City of Austin*, 953 S.W.2d at 430. Receipt of another's ETJ, existing or future, is not automatic. *See id.* The legislature allows for receipt of released ETJ only by annexation, population growth, or request. *See* Tex. Loc. Gov't Code Ann. § 42.022 (Vernon 1999).

### 2. Validation Statute

 Moreover, even if we were to conclude that the statute does not authorize municipalities to enter into binding agreements that limit ETJ in the future, we would conclude that the agreement at issue in this case was rendered valid pursuant to article 974d–39, section 3(b) of the 1992 Texas Validation Statute. *See* Tex. Rev.Civ. Stat. Ann. art. 974d–39, § 3(b) (Vernon Supp.1992);[5] *see also* Tex. Loc. Gov't Code Ann. § 51.003 (Vernon Supp. 2004–2005) (current validation statute). Article 974d–39 applied to "any incorporated city, town, or village operating under general laws or under a home-rule charter." Tex.Rev.Civ. Stat. Ann. art. 974d–39, § 1 (Vernon Supp.1992). Section 3(b) provided as follows:

> [a]ll governmental proceedings performed by governing bodies of [incorporated or attempted to be incorporated]

cities and towns and their officers since their incorporation or attempted incorporation are validated as of the date of such proceedings, including extensions or attempted extensions of extraterritorial jurisdiction undertaken at the requires of owners of territory.

*Id.* § 3(b). Mission asserts that this 1992 Texas Validation Statute cured any substantive defects that may have existed in the 1991 ordinances. We agree.

 The legislature has the power to ratify any act which it had the power to authorize, even if the act was void in its inception. *City of Murphy*, 932 S.W.2d at 481 n. 1. The question then is not one of legislative power, but one of construction of the validation act, whether the legislature intended to validate an attempt to apportion future ETJ. *City of Waco v. City of McGregor*, 523 S.W.2d 649, 652 (Tex. 1975). It is important to note that "curative statutes are liberally construed only to effectuate the intent of the legislature in enacting them and not to other ends." *Id.* at 653.

Like its predecessors, section 3 of article 974d–39 contained general language validating governmental proceedings performed by cities since their incorporation. Tex.Rev.Civ. Stat. Ann. art. 974d–39 § 3(b) (Vernon Supp.1992). Section 3(b) also specifically validated extensions or attempted extensions of ETJ undertaken at the request of owners of territory; specific voluntary extensions allowed by statute. *Id.*; *see* Tex. Loc. Gov't Code Ann. § 42.022(b) (Vernon 1999). Absent from this validation statute was language validating a municipality's apportionment of future ETJ. However, because the legislature has addressed and allowed for the release of

---

**5.** This statute became effective in 1992. *See Kinkaid School, Inc. v. W. McCarthy*, 833 S.W.2d 226, 231 (Tex.App.-Houston [1st Dist.] 1992, no writ) (concluding statute applies to governmental acts and proceedings occurring before effective date of statute).

existing ETJ, *see id.* § 42.023, we conclude the legislature intended to validate an attempt to limit ETJ in the future as delineated by the ordinances in this case.

Nevertheless, while concluding the release of each city's future ETJ was validated by statute, again, we do not conclude section 3(b) validated Mission's receipt of the future ETJ. *See City of Austin,* 953 S.W.2d at 430. We cannot conclude that the legislature would validate an ordinance that attempted to expand a municipality's ETJ through the receipt of another's future ETJ in contradiction of the express statutory limitations on a municipality's authority. *See* TEX. LOC. GOV'T CODE ANN. § 42.022 (Vernon 1999) (providing ETJ to be acquired through annexation, request or increase in number of inhabitants).

### C. Ambiguity

Alton asserts, in the alternative, that the ordinances are ambiguous as to whether they apply solely to subdivision regulation or to annexation as well. It contends that a fact issue exists as to the intent of the breadth of the agreement and Mission's motion for summary judgment should have been denied. The parties agree that they entered into an agreement. Our review, therefore, will be under the law regarding contract construction.

"[I]f there is no ambiguity, the construction of the written instrument is a question of law for the Court." *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). "It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing." *Id.* "In the usual case, the instrument alone will be deemed to express the intentions of the parties for it is objective, not subjective, intent that con-

trols." *Id.* "The primary concern of a court interpreting a contract is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R & P Enter. v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex.1980).

While the preamble of each ordinance refers to sections 42.021 and 42.901, the language in the body of each ordinance defines "boundaries" beyond which Alton's ETJ and Mission's ETJ will not go: Alton's ETJ shall not extend south across, nor Mission's ETJ north of, 4 Mile Line Road and Alton's ETJ shall not extend west, nor Mission's ETJ extend east, of Moorefield Road and Alton's ETJ shall not extend north, nor Mission's ETJ extend south of, 6 Mile Line Road. The ordinances do not state that they are limited to defining ETJ only for the purposes of subdivision development. The agreement, as memorialized by the ordinances, clearly expresses the intent of Mission and Alton to define ETJ for all purposes, not just for subdivision development. Moreover, Alton concedes that Mission has authority to assert power to regulate subdivision plats within a five-mile limit of its incorporated area, *see* TEX. LOC. GOV'T CODE ANN. §§ 212.001–.003 (Vernon 1999 & Vernon Supp.2004–2005), and, pursuant to section 212.007, Mission, as the municipality with the largest population, had authority to review and approve a plat for a tract located in overlapping ETJ, if any, of Mission and Alton. *See id.* § 212.007(a) (Vernon 1999). Therefore, if the agreement were solely for the defining of future ETJ for subdivision development, it would not have been necessary. We conclude, therefore, the ordinances that form the basis of this suit are not ambiguous.

### D. Continuing Performance

In the alternative, Alton contends the agreement impermissibly contemplates

a continuing performance, or successive performances for an indefinite duration, and, therefore, allows Alton to terminate the agreement at any time. However, unlike *Clear Lake Water Auth. v. Clear Lake Util. Co.,* 549 S.W.2d 385, 390 (Tex.1977) (involving an agreement that provided fixed rates for an indefinite time caused governmental entities great future financial losses), the authority upon which Alton relies, the agreement between Alton and Mission involved one transaction, similar to the sale of real estate, that took place when the ordinances were passed.

### E. Repeal of Ordinance

■ Alton also contends it has authority to repeal the ordinance for the public good pursuant to section 51.001 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 51.001 (Vernon 1999) (setting out that city may "adopt, publish, amend, or repeal an ordinance that ... is for the good government, peace, or order of the municipality or for the trade and commerce of the municipality...."). However, Alton's argument disregards the fact that the mutual ordinances represent a contract between Alton and Mission, and contract principles apply in this case. *See Belton v. Head,* 137 S.W. 417, 418 (Tex.Civ.App.-Austin 1911, no pet.) ("All ordinances ... are subject to repeal, except such as are contractual in their character.")

### F. Lack of Consideration

■ Also in the alternative, Alton argues a fact issue exists regarding Alton's affirmative defense that the purported agreement between the cities fails for lack of consideration. *See Carrico v. Kondos,* 111 S.W.3d 582, 586–87 (Tex.App.-Fort Worth 2003, no pet.) (issue of material fact on affirmative defense of failure of consideration precluded summary judgment).

However, in accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and to the record. TEX.R.APP. P. 38.1(h). Because this contention is inadequately briefed, we will not review it.

### G. Attorney's Fees

■ Alton also complains that the trial court should not have awarded attorney's fees and costs to Mission because the trial court based this award upon its decision to grant Mission's motion for summary judgment. In a declaratory judgment action the trial "court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). "[I]n reviewing an attorney fee award under the [declaratory judgment act], the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998). Alton contends that because Mission was not entitled to prevail upon its summary judgment motion, the trial court's award of costs and fees was not equitable and just. However, having determined that Mission was entitled to prevail on its claims regarding future ETJ and Alton was not, we conclude the trial court did not abuse its discretion in awarding costs and attorney's fees to Mission.

### H. Annexation

■ Additionally, we note that the trial court granted Mission's summary judgment on the basis that the cities entered into a valid agreement and that Alton's repeal of the agreement was void. It did

not grant Mission's summary judgment on the basis that Alton's complained-of annexations were void, and Mission does not bring annexation as an issue on appeal. The trial court also denied Alton's motion for summary judgment, as well as all other relief sought. On appeal, Alton complains that Mission also violated the agreement.[6] Alton, however, did not urge Mission's violation as a basis for its motion for summary judgment. *See* Tex.R. Civ. P. 166a(c) (providing motion for summary judgment shall state specific grounds); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex.1993) (concluding issues not expressly presented to trial court by written motion or response cannot be considered on appeal as grounds for reversal). Therefore, the issue of annexation and Mission's alleged breach are not before us.

## IV. Conclusion

Accordingly, we conclude the trial court did not err in granting Mission's motion for summary judgment and denying Alton's motion for summary judgment to the extent the motions addressed limitation of future ETJ. Alton's first and second issues are overruled.

Having overruled Alton's issues on appeal, we affirm the trial court's declaration that, as to future ETJ, Alton's ordinance 91–05 and Mission's ordinance 1614 constituted a valid and fully enforceable contract and Alton's action of repealing ordinance 91–05 constituted a breach of contract.

6. By a counterclaim, Alton alleged that Mission first breached the agreement by the extension of its ETJ south of 6 Mile Road and north of 4 Mile Road and by an annexation east of Moorefield Road.