NUMBER 13-03-324-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

CITY OF ALTON,                                                              Appellant,

v.

CITY OF MISSION,                                                             Appellee.
___________________________________________________________________

On appeal from the 206th District Court
of Hidalgo County, Texas.
__________________________________________________________________

O P I N I O N

Before Justices Yanez, Rodriguez, and Garza
Opinion by Justice Rodriguez
 
         This action for declaratory judgment involves a dispute between two cities
regarding the extent of each city's extraterritorial jurisdiction (ETJ). Appellee, the City
of Mission (Mission), filed a traditional motion for summary judgment arguing that (1)
the ETJ agreement between Mission and appellant, the City of Alton (Alton), was valid
and binding and (2) Alton breached that agreement by repealing its ordinance that set
out the alleged agreement and by annexing property north of Mile 6 North Road. Alton
also filed a traditional summary judgment motion challenging the validity of the
respective ordinances and, if valid, the extent and effect of the ordinances that
memorialized the agreement.
         In its summary judgment, the trial court granted Mission's motion in its entirety
declaring: (1) Alton's ordinance 91-05 and Mission's ordinance 1614 constituted a
valid and fully enforceable contract between the cities; and (2) Alton's action repealing
ordinance 91-05 constituted a breach of contract and was, therefore, void ab initio. 
The trial court also denied Alton's motion for summary judgment in its entirety and
declared that all claims asserted by Alton were denied. The trial court also awarded
Mission attorney's fees. All other relief not expressly granted was denied.
         By two issues, Alton contends the trial court erred in granting Mission's motion
and denying Alton's motion. We affirm.
I. Background
         In 1991, Mission and Alton signed ordinances addressing their respective ETJs. 
Mission signed ordinance 1614 on April 22, 1991. Alton adopted ordinance 91-05 on
August 20, 1991. The ordinances mirrored each other. Each provided, in relevant
part:
1.The City of Alton's extraterritorial jurisdiction shall not extend
south across, nor the City of Mission's extraterritorial jurisdiction north
of[,] 4 Mile Line Road, and Alton['s] extraterritorial jurisdiction shall not
extend west[,] nor Mission's extraterritorial jurisdiction extend east, of
Moorefield Road, and Alton's extraterritorial jurisdiction shall not extend
north, nor Mission's extraterritorial jurisdiction extend south, of 6 Mile
Line Road . . . .
 
2.This agreement [hereinafter referred to as the 1991 agreement]
shall become effective immediately upon passage of an ordinance
entering into said contract passed by both Cities.

         In 2001, Alton passed ordinance 2001-11 repealing ordinance 91-05. It also
annexed outside the ETJ described in the 1991 ordinances. Subsequently, Mission
intervened in an existing lawsuit involving the City of McAllen and Alton. Through its
intervention, Mission sought a declaratory judgment that Alton unilaterally breached
the 1991 agreement when it repealed ordinance 91-05 and annexed outside its ETJ. 
Alton filed a first amended answer and original counterclaim denying Mission's claims
and asserting ordinance 91-05 could not and did not abdicate Alton's power to annex
property within its ETJ and that, at most, the ordinance governed only subdivision
regulations, not annexation; thus, the 1991 agreement, if any, should be declared
invalid. Both cities filed motions for summary judgment. Finding that the ordinances
constituted a valid and fully enforceable contract between Alton and Mission and that
Alton's action of repealing its ordinance constituted a breach of contract and, thus,
was void ab initio, the trial court granted Mission's motion and denied Alton's motion. 
The claims filed by the City of McAllen against Alton were severed from the suit. It
is from the summary judgment granted in Mission's favor that Alton now appeals.
II. Standard of ReviewAppellate courts review de novo the granting of a traditional motion for
summary judgment under Texas Rule of Civil Procedure 166a(c). Natividad v. Alexsis,
Inc., 875 S.W.2d 695, 699 (Tex. 1994); Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex.
App.–Corpus Christi 2003, no pet.); see Tex. R. Civ. P. 166a(c). To prevail on
summary judgment, a party must conclusively prove all elements of its cause of action
or defense as a matter of law. Tex. R. Civ. P. 166a(c); Holy Cross Church of God in
Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). When both sides move for
summary judgment and the trial court grants one motion but denies the other, the
appellate court should review the summary-judgment evidence that both sides
submitted, determine all questions presented, and render the judgment that the trial
court should have rendered. Holy Cross Church of God in Christ, 44 S.W.3d at 566.
III. Analysis
A. Statutory ETJ
1. Defining ETJ
         For the purpose of promoting and protecting the general health, safety, and
welfare of persons residing in and adjacent to the municipalities, the legislature has
designated certain areas as the ETJ of municipalities. See Tex. Loc. Gov't Code Ann.
§ 42.001 (Vernon 1999).


 Chapter 42 of the local government code establishes the
geographical limits of a city's ETJ. See id. § 42.021. The geographical limits vary
according to the city's population. See id. For example, the ETJ of a city with fewer
than 5,000 inhabitants, such as Alton in 1991, extends one-half mile from its
incorporated area; a city with 25,000 to 49,999 inhabitants, such as Mission in 1991,
has a two-mile ETJ; and the ETJ of a city with 100,000 or more inhabitants extends
five miles from its corporate boundaries. See id. § 42.021 (1), (3), (5). A municipality
may extend its ETJ beyond those limits to contiguous areas where the owners have
requested to be included in the municipality's ETJ. Id. § 42.022(b) (describing
voluntary ETJ). Moreover, the ETJ of a municipality may be reduced if the governing
body of the municipality gives its written consent by ordinance or resolution.


 See id.
§ 42.023. Section 42.023, however, authorizes only the "release" of ETJ; it does not
authorize another municipality to automatically "receive" the released area, thereby
increasing its ETJ beyond the boundaries specified in section 42.021. City of Austin
v. City of Cedar Park, 953 S.W.2d 424, 430 (Tex. App.–Austin 1997, no writ).
2. ETJ for Annexation Purposes
         Chapter 43 outlines the procedure for annexation and disannexation by a
municipality. See Tex. Loc. Gov't Code Ann. §§ 43.001-42.904 (Vernon 1999 &
Supp. 2004-2005). "A municipality may annex area only in its extraterritorial
jurisdiction unless the municipality owns the area." See id. § 43.051 (Vernon 1999);
but see City of Murphy v. City of Parker, 932 S.W.2d 479, 480 (Tex. 1996) (ruling
section 43.901 bars a municipality's challenge to another municipality's annexation
of its extraterritorial jurisdiction if not brought within two years). In chapter 43,
"extraterritorial jurisdiction" means ETJ as determined under chapter 42. See Tex.
Loc. Gov't Code Ann. § 43.001 (Vernon 1999) (defining ETJ for annexation
purposes).
3. ETJ for Subdivision Development
         Chapter 212 of the local government code governs a city's authority to regulate
subdivisions within its ETJ. See id. § 212.002 (providing that governing body of
municipality may adopt rules governing plats and subdivisions of land within
municipality's jurisdiction to promote health, safety, morals, or general welfare of
municipality and safe, orderly, and healthful development of municipality). A
municipality's ETJ under chapter 212 is generally "a municipality's extraterritorial
jurisdiction as determined under Chapter 42" of the local government code. Id. §
212.001(1). Unlike chapter 43, however, there is an exception to the general rule; the
ETJ of a city with a population of 5,000 or more located in a county that borders the
Rio Grande is extended to five miles for the purpose of subdivision regulation. Id.
B. Limiting ETJ
1. Validity of Agreement Pursuant to Statute
         By two issues, Alton challenges the validity of the ordinances to the extent they
attempt to limit future ETJ.


 Alton argues that although it has statutory authority to
relinquish existing ETJ, it has no authority to limit ETJ not yet acquired because such
limitation would impact its ability to annex new territory. See id. § 43.051 (stating
municipality may annex area only in its ETJ unless it owns area). However, the
legislature allows for the release of existing ETJ, see § 42.023, which also limits
annexation in certain areas. We are unpersuaded by Alton's argument that limiting
future ETJ constitutes an abdication of a municipality's right to annex when limiting
or releasing existing ETJ does not.
         Alton also contends that restricting future ETJ would be void as against public
policy because Alton has the duty to protect the public good of its citizens as well as
those persons who reside within its ETJ. See id. § 42.001 (providing that legislature
designated ETJ for purpose of promoting and protecting general health, safety, and
welfare of persons residing adjacent to municipalities). Alton asserts that
abandonment of statutorily created ETJ in 1991 created a "no man's land" on its
municipal boundaries outside of Mission's statutory two-mile ETJ and not subject to
Alton's jurisdiction. However, this 1991 agreement is not an abandonment of ETJ,
it is an agreement to limit the acquisition of ETJ in the future as areas are annexed. 
Moreover, Mission urges that determining potential future boundaries for Alton and
Mission allows for cities to plan for growth and invest money into a more defined area. 
Mission asserts that preannexation agreements that limit the expansion of ETJ in the
future "further important governmental purposes, such as the encouragement of
expanding urban areas uniformly, economically, efficiently, and fairly, with optimum
provisions made for the establishment of land use controls and necessary municipal
improvements." See City of Springfield v. Judith Hones Dietsch Trust, 746 N.E.2d
1272, 1276 (App. Ill.[4th Dist.] 2001) (discussing policy behind allowing
preannexation agreements with regard to areas that may not be contiguous to
municipality's existing ETJ). While we find no Texas case on point, the legislature has
provided for the regulation of plats and subdivision development and, in the case of
a city like Mission that has a population of 5,000 or more and is located in a county
that borders the Rio Grande, has extended such city's ETJ to five miles for the purpose
of subdivision regulation. See Tex. Loc. Gov't Code Ann. §§ 212.001(1), 212.002
(Vernon 1999) (explaining that governing body of municipality may adopt rules
governing plats and subdivisions of land within municipality's jurisdiction to promote
health, safety, morals, or general welfare of municipality and safe, orderly, and
healthful development of municipality).



         Chapter 42 of the Texas Local Government Code authorizes municipalities to
enter binding ETJ agreements. See id. §§ 42.023, 42.041 & 42.901. The sections
cited by Mission provide methods by which a municipality may agree to reduce its ETJ,
to release its ETJ to allow for the incorporation of another city, and to apportion
overlapping ETJ. See id. Specific to the facts of this case, pursuant to section
42.023, a municipality may, by written consent, reduce its ETJ as defined in chapter
42 in favor of another municipality. See City of Murphy, 932 S.W.2d at 481. By this
section, the legislature provided no limiting language such that the agreements
necessarily require the reduced ETJ to be existing ETJ. We conclude, therefore, that
a municipality may enter into an agreement to reduce either its existing or its future
ETJ.
         This is not to say, however, that upon the reduction of future ETJ another
municipality, such as Mission in this case, automatically receives the reduced or
released area thereby increasing its ETJ for annexation purposes beyond the
boundaries specified in section 42.021. See City of Austin, 953 S.W.2d at 430. 
Receipt of another's ETJ, existing or future, is not automatic. See id. The legislature
allows for receipt of released ETJ only by annexation, population growth, or request. 
See Tex. Loc. Gov't Code Ann. § 42.022 (Vernon 1999).
2. Validation Statute
         Moreover, even if we were to conclude that the statute does not authorize
municipalities to enter into binding agreements that limit ETJ in the future, we would
conclude that the agreement at issue in this case was rendered valid pursuant to article
974d-39, section 3(b) of the 1992 Texas Validation Statute. See Tex. Rev. Civ. Stat.
Ann. art. 974d-39, § 3(b) (Vernon Supp. 1992);


 see also Tex. Loc. Gov't Code
Ann. § 51.003 (Vernon Supp. 2004-2005) (current validation statute). Article 974d-39 applied to "any incorporated city, town, or village operating under general laws or
under a home-rule charter." Tex. Rev. Civ. Stat. Ann. art. 974d-39, § 1 (Vernon
Supp. 1992). Section 3(b) provided as follows:
[a]ll governmental proceedings performed by governing bodies of
[incorporated or attempted to be incorporated] cities and towns and their
officers since their incorporation or attempted incorporation are validated
as of the date of such proceedings, including extensions or attempted
extensions of extraterritorial jurisdiction undertaken at the requires of
owners of territory.

Id. § 3(b). Mission asserts that this 1992 Texas Validation Statute cured any
substantive defects that may have existed in the 1991 ordinances. We agree.
         The legislature has the power to ratify any act which it had the power to
authorize, even if the act was void in its inception. City of Murphy, 932 S.W.2d at
481 n.1. The question then is not one of legislative power, but one of construction
of the validation act, whether the legislature intended to validate an attempt to
apportion future ETJ. City of Waco v. City of McGregor, 523 S.W.2d 649, 652 (Tex.
1975). It is important to note that "curative statutes are liberally construed only to
effectuate the intent of the legislature in enacting them and not to other ends." Id. at
653.
         Like its predecessors, section 3 of article 974d-39 contained general language
validating governmental proceedings performed by cities since their incorporation. Tex.
Rev. Civ. Stat. Ann. art. 974d-39 § 3(b) (Vernon Supp. 1992). Section 3(b) also
specifically validated extensions or attempted extensions of ETJ undertaken at the
request of owners of territory; specific voluntary extensions allowed by statute. Id.;
see Tex. Loc. Gov't Code Ann. § 42.022(b) (Vernon 1999). Absent from this
validation statute was language validating a municipality's apportionment of future
ETJ. However, because the legislature has addressed and allowed for the release of
existing ETJ, see id. § 42.023, we conclude the legislature intended to validate an
attempt to limit ETJ in the future as delineated by the ordinances in this case.
         Nevertheless, while concluding the release of each city's future ETJ was
validated by statue, again, we do not conclude section 3(b) validated Mission's receipt
of the future ETJ. See City of Austin, 953 S.W.2d at 430. We cannot conclude that
the legislature would validate an ordinance that attempted to expand a municipality's
ETJ through the receipt of another's future ETJ in contradiction of the express
statutory limitations on a municipality's authority. See Tex. Loc. Gov't Code Ann. §
42.022 (Vernon 1999) (providing ETJ to be acquired through annexation, request or
increase in number of inhabitants).
C. Ambiguity
         Alton asserts, in the alternative, that the ordinances are ambiguous as to
whether they apply solely to subdivision regulation or to annexation as well. It
contends that a fact issue exists as to the intent of the breadth of the agreement and
Mission's motion for summary judgment should have been denied. The parties agree
that they entered into an agreement. Our review, therefore, will be under the law
regarding contract construction.
         "[I]f there is no ambiguity, the construction of the written instrument is a
question of law for the Court." City of Pinehurst v. Spoonser Addition Water Co., 432
S.W.2d 515, 518 (Tex. 1968). "It is the general rule of the law of contracts that
where an unambiguous writing has been entered into between the parties, the Courts
will give effect to the intention of the parties as expressed or as is apparent in the
writing." Id. "In the usual case, the instrument alone will be deemed to express the
intentions of the parties for it is objective, not subjective, intent that controls." Id. 
"The primary concern of a court interpreting a contract is to ascertain and to give
effect to the intentions of the parties as expressed in the instrument." R & P Enter.
v. LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 518 (Tex. 1980).
         While the preamble of each ordinance refers to sections 42.021and 42.901, the
language in the body of each ordinance defines "boundaries" beyond which Alton's
ETJ and Mission's ETJ will not go: Alton's ETJ shall not extend south across, nor
Mission's ETJ north of, 4 Mile Line Road and Alton's ETJ shall not extend west, nor
Mission's ETJ extend east, of Moorefield Road and Alton's ETJ shall not extend north,
nor Mission's ETJ extend south of, 6 Mile Line Road. The ordinances do not state that
they are limited to defining ETJ only for the purposes of subdivision development. The
agreement, as memorialized by the ordinances, clearly expresses the intent of Mission
and Alton to define ETJ for all purposes, not just for subdivision development. 
Moreover, Alton concedes that Mission has authority to assert power to regulate
subdivision plats within a five-mile limit of its incorporated area, see Tex. Loc. Gov't
Code Ann. §§ 212.001-.003 (Vernon 1999 & Vernon Supp. 2004-2005), and,
pursuant to section 212.007, Mission, as the municipality with the largest population,
had authority to review and approve a plat for a tract located in overlapping ETJ, if
any, of Mission and Alton. See id. § 212.007(a) (Vernon 1999). Therefore, if the
agreement were solely for the defining of future ETJ for subdivision development, it
would not have been necessary. We conclude, therefore, the ordinances that form the
basis of this suit are not ambiguous.
D. Continuing Performance
         In the alternative, Alton contends the agreement impermissibly contemplates a
continuing performance, or successive performances for an indefinite duration, and,
therefore, allows Alton to terminate the agreement at any time. However, unlike Clear
Lake Water Auth. v. Clear Lake Util. Co., 549 S.w.2d 385, 390 (Tex. 1977) (involving
an agreement that provided fixed rates for an indefinite time caused governmental
entities great future financial losses), the authority upon which Alton relies, the
agreement between Alton and Mission involved one transaction, similar to the sale of
real estate, that took place when the ordinances were passed.
E. Repeal of Ordinance
         Alton also contends it has authority to repeal the ordinance for the public good
pursuant to section 51.001 of the Texas Local Government Code. See Tex. Loc.
Gov't Code Ann. § 51.001 (Vernon 1999) (setting out that city may "adopt, publish,
amend, or repeal an ordinance that . . . is for the good government, peace, or order of
the municipality or for the trade and commerce of the municipality . . . ."). However,
Alton's argument disregards the fact that the mutual ordinances represent a contract
between Alton and Mission, and contract principles apply in this case. See Belton v.
Head, 137 S.W. 417, 418 (Tex. Civ. App.–Austin 1911, no pet.) ("All ordinances .
. . are subject to repeal, except such as are contractual in their character.")
F. Lack of Consideration
         Also in the alternative, Alton argues a fact issue exists regarding Alton's
affirmative defense that the purported agreement between the cities fails for lack of
consideration. See Carrizo v. Kondo, 111 S.W.3d 582, 586-87 (Tex. App.–Fort Worth
2003, no pet.) (issue of material fact on affirmative defense of failure of consideration
precluded summary judgment). However, in accordance with rule 38.1(h) of the Texas
Rules of Appellate Procedure, we will only consider contentions that are supported by
clear and concise arguments with appropriate citations to authorities and to the record.
Tex. R. App. P. 38.1(h). Because this contention is inadequately briefed, we will not
review it.
G. Attorney's Fees
         Alton also complains that the trial court should not have awarded attorney's
fees and costs to Mission because the trial court based this award upon its decision
to grant Mission's motion for summary judgment. In a declaratory judgment action the
trial "court may award costs and reasonable and necessary attorney's fees as are
equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997). "[I]n
reviewing an attorney fee award under the [declaratory judgment act], the court of
appeals must determine whether the trial court abused its discretion by awarding fees
when there was insufficient evidence that the fees were reasonable and necessary, or
when the award was inequitable or unjust." Bocquet v. Herring, 972 S.W.2d 19, 21
(Tex. 1998). Alton contends that because Mission was not entitled to prevail upon
its summary judgment motion, the trial court's award of costs and fees was not
equitable and just. However, having determined that Mission was entitled to prevail
on its claims regarding future ETJ and Alton was not, we conclude the trial court did
not abuse its discretion in awarding costs and attorney's fees to Mission.
H. Annexation
         Additionally, we note that the trial court granted Mission's summary judgment
on the basis that the cities entered into a valid agreement and that Alton's repeal of
the agreement was void. It did not grant Mission's summary judgment on the basis
that Alton's complained-of annexations were void, and Mission does not bring
annexation as an issue on appeal. The trial court also denied Alton's motion for
summary judgment, as well as all other relief sought. On appeal, Alton complains that
Mission also violated the agreement.


 Alton, however, did not urge Mission's violation
as a basis for its motion for summary judgment. See Tex. R. Civ. P. 166a(c) (providing
motion for summary judgment shall state specific grounds); McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex. 1993) (concluding issues not expressly
presented to trial court by written motion or response cannot be considered on appeal
as grounds for reversal). Therefore, the issue of annexation and Mission's alleged
breach are not before us.
IV. Conclusion
         Accordingly, we conclude the trial court did not err in granting Mission's motion
for summary judgment and denying Alton's motion for summary judgment to the
extent the motions addressed limitation of future ETJ. Alton's first and second issues
are overruled.
         Having overruled Alton's issues on appeal, we affirm the trial court's declaration
that, as to future ETJ, Alton's ordinance 91-05 and Mission's ordinance 1614
constituted a valid and fully enforceable contract and Alton's action of repealing
ordinance 91-05 constituted a breach of contract.


                                                                                 NELDA V. RODRIGUEZ
                                                                                 Justice

Opinion delivered and filed 
this 26th day of May, 2005.