THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. DONALD LEGO, Defendant-Appellee (The Department of Corrections, Intervenor-Appellant).

Third District   No. 3—90—0551

Opinion filed March 12, 1991.—Rehearing denied April 26, 1991.

Charles Hoffman, of State Appellate Defender's Office, of Chicago, and Charles M. Schiedel, of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The Illinois Department of Corrections (hereinafter IDOC) appeals the decision of the circuit court of Will County ordering the IDOC to transfer Donald Lego to another facility pursuant to his post-conviction petition.

Following Lego's conviction for murder, the circuit court of Will County sentenced him to death and remanded him to the IDOC, which assigned him to the condemned unit of Menard Correctional Center (hereinafter Menard). Lego then petitioned for post-conviction relief and alleged among other things that, at the time of trial, he was suffering from an impaired mental condition which rendered him unfit to stand trial and incapable of making certain important decisions. He requested a psychiatric expert be appointed and that he be temporarily transferred from Menard to Stateville or Joliet penitentiary, both of which were located within Will County, so that his location would be more convenient to his attorney, psychiatrist, and investigator.

The circuit court of Will County granted his request and ordered the IDOC to transfer him to either Stateville or Joliet penitentiary. No representative of the IDOC was present at the hearing; however, upon being so notified, the IDOC intervened and objected.

The IDOC requested the circuit court reconsider its decision for the following reasons. Lego was permanently housed within the condemned unit of Menard, because Stateville and Joliet penitentiaries did not have such secure facilities. In order for IDOC to transfer Lego, his safety, as well as that of others, would be jeopardized. Further, there would be considerable expense in transferring Lego, such as additional manpower and vehicles. IDOC countered that it would be more convenient and less burdensome if Lego's attorney, psychiatrist, and investigator visit him at Menard. IDOC guaranteed them normal access to Lego at Menard. The circuit court denied the IDOC's motion to reconsider and stay the transfer. We reverse and remand.

The issue presented on appeal is one of first impression within the State of Illinois: Did the circuit court exceed its authority

in ordering the transfer of an IDOC inmate for purposes of giving him closer access to his attorney, psychiatrist, and investigator? We believe the circuit court exceeded its authority for the reasons stated below.

It is universally understood that IDOC has the sole discretion with respect to placing, handling, and transferring inmates within its control. Furthermore, the convenience afforded an inmate's experts, *e.g.*, attorney, psychiatrist, and investigator, is far outweighed in this case by the additional expenses, procedures, and risks associated with transferring an inmate for purposes of meeting with his experts. It should be noted that Lego has been convicted of a capital offense, sentenced to death, and is currently within a condemned unit of an IDOC facility.

The Illinois Department of Corrections is charged with the responsibility to maintain programs of control, rehabilitation, and employment of prisoners. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—2—2.) The IDOC has the ability and power to assign prisoners to any of its facilities. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—2—2(b).) Courts are not to intervene in matters within the discretion of the IDOC, including the location where inmates are assigned and housed. *People v. Fowler* (1958), 14 Ill. 2d 252, 151 N.E.2d 324.

Courts have been reluctant to interfere in the administration of prisons and the administration of the departments operating and managing the prisons, *e.g.*, Illinois Department of Corrections, Federal Bureau of Prisons, etc. (*Procunier v. Martinez* (1974), 416 U.S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800.) It is not a proper or valid ground to file a petition for writ of *habeas corpus* to direct prison officials with regard to the care and handling of an inmate. *United States ex rel. Knight v. Ragen* (7th Cir. 1964), 337 F.2d 425, *cert. denied* (1965), 380 U.S. 985, 14 L. Ed. 2d 277, 85 S. Ct. 1355.

■ There is a clearly distinguishable situation in which a court can order the transfer of an inmate within the control of the IDOC, *i.e.*, when an inmate is scheduled to testify or otherwise has a right to be present for hearing. The circuit court has the authority to order an inmate brought before the court for hearing. (Ill. Rev. Stat. 1989, ch. 38, par. 122—6.) This is accomplished by the issuance of a writ of *habeas corpus ad testificandum*. (Ill. Rev. Stat. 1989, ch. 110, par. 10—135.) In the instant case, the circuit court exceeded its authority by ordering Lego's transfer, not for a hearing or mandatory court appearance, but only for the convenience of his attorney, psychiatrist, and investigator.

■ In addition to the reasons above set forth, there are policy

reasons the circuit courts are without authority to order the transfer of an inmate for reasons other than a court appearance: costs, safety, and authority. These factors are not limited to these three categories, but the policy reasons are sufficiently persuasive to limit a circuit court's authority over inmates within the IDOC. The financial expenses and security risks in transferring inmates are obvious. In addition, there would be a likely increase in the number of inmates petitioning the courts for transfer from one IDOC facility to another if this procedure were approved.

To transfer a condemned inmate such as Lego, the IDOC would have to engage several IDOC employees and vehicles to transport him to another facility. Escape is always a possibility, and that possibility could be exacerbated if outside assistance was provided or prearranged. The facilities within close proximity to Will County do not have sufficient facilities to house death row inmates. The entire situation would burden IDOC with additional special precautions while the inmate was located at the transfer site.

For the reasons herein set forth, the circuit court of Will County is reversed and this matter is remanded to the circuit court for further action consistent with this decision.

Reversed and remanded.

BARRY and GORMAN, JJ., concur.