THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAROLD L. FREED, Defendant-Appellee (The Department of Corrections, Appellant).

Fourth District   No. 4—01—0831

Opinion filed February 20, 2002.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellant.

Jim R. Gudgel, Public Defender, of Springfield, for appellee.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1999, the trial court found defendant, Harold L. Freed, to be a sexually dangerous person, as defined in section 1.01 of the Sexually Dangerous Persons Act (Act) (725 ILCS 205/1.01 (West 1998)), and committed him to the Director of the Illinois Department of Corrections (Department). In February 2001, defendant *pro se* filed an application showing recovery under section 9 of the Act (725 ILCS 205/9 (West 2000)). In June 2001, defendant, through his appointed counsel, requested that the court appoint a psychiatrist not employed by the Department to conduct an independent psychiatric examination of him. In July 2001, the court granted defendant's request for an independent psychiatric examination.

On August 10, 2001, defendant filed a second-amended petition for writ of *habeas corpus ad testificandum*, requesting that the trial court order the Department to bring him from Big Muddy River Correctional Center (Big Muddy) to the Sangamon County jail (jail) on August 11, 2001, where he would be housed until August 14, 2001, for an independent psychiatric examination and a "future hearing." That same day, the court issued an order directing the Department to house defendant at the jail from August 11, 2001, through August 14, 2001, "with custody to remain with the [Department]."

The Department appeals the trial court's August 10, 2001, order, and we reverse.

## I. BACKGROUND

In October 1998, the State charged defendant with aggravated criminal sexual abuse (720 ILCS 5/12—16(a) (West 1996)) and two

counts of child pornography (720 ILCS 5/11—20.1(a)(1) (West 1994)). In November 1998, the State (1) petitioned the trial court to proceed under the Act (725 ILCS 205/1.01 through 12 (West 1998)) and (2) moved the court to appoint two psychiatrists, Dr. Joseph Bohlen and Dr. Terry Killian, to examine defendant and report back to the court. The court later granted both the State's petition and its motion.

In January 1999, the State filed a petition to have defendant declared a sexually dangerous person under the Act (725 ILCS 205/1.01 through 12 (West 1998)), alleging the following: (1) the charges then pending against defendant—namely, aggravated criminal sexual abuse (720 ILCS 5/12—16(a) (West 1996)) and two counts of child pornography (720 ILCS 5/11—20.1(a)(1) (West 1994)); (2) defendant had a history of sexual involvement with children; and (3) both Killian and Bohlen had concluded that defendant was a sexually dangerous person in that he suffered from a mental illness, pedophilia, which had existed for more than a year. Later that month, defendant stipulated to and admitted the allegations set forth in the State's petition, and the trial court found him to be a sexually dangerous person and committed him to the Department. Defendant was later assigned to Big Muddy.

In February 2001, defendant *pro se* filed (1) an application showing recovery under section 9 of the Act (725 ILCS 205/9 (West 2000)); and (2) a motion for writ of *habeas corpus ad testificandum*, requesting that he be produced before the trial court "at such time, and for such purpose, as may be required." Later that month, the court ordered the Department to prepare a socio-psychiatric report regarding defendant, and in May 2001, the Department filed that report with the court.

In June 2001, defendant requested that the trial court appoint a psychiatrist not employed by the Department to conduct an independent psychiatric examination of him. In a July 2001 docket entry, the court granted defendant's request for an independent psychiatric examination and directed that a writ was "to issue directing delivery of [defendant] to the [jail]." Later that month, defendant filed a petition for writ of *habeas corpus ad testificandum*, requesting that the court direct the Department to bring him to the jail on August 11, 2001, to be evaluated by Killian. That same day, the court entered an order issuing the writ.

On August 7, 2001, the Department filed a motion to quash the trial court's July 2001 order, alleging that the court had erred by issuing the writ because it was not for one of the purposes provided in section 10—135 of the Code of Civil Procedure, which sets forth the proper procedure for bringing an inmate before the trial court (herein-

after *habeas corpus ad testificandum* statute) (735 ILCS 5/10—135 (West 2000)). On August 8, 2001, the court granted defendant's amended petition for writ of *habeas corpus ad testificandum,* which requested that the court direct the Department to bring defendant to the jail on August 11, 2001, to be evaluated by Killian and for a "future hearing."

On August 9, 2001, the Department filed a motion to quash the trial court's August 8, 2001, order, alleging that the court erred by (1) issuing the writ for an improper purpose under the *habeas corpus ad testificandum* statute (735 ILCS 5/10—135 (West 2000)), (2) transferring custody of defendant from the Department to jail officials, and (3) compelling the production of defendant too far in advance of any scheduled court hearing. That same day, the court denied the Department's motion, upon finding that (1) defendant had a right to an independent psychiatric examination; (2) the Department was reading the *habeas corpus ad testificandum* statute too narrowly; and (3) quashing the August 8, 2001, order would impose inappropriate burdens on defendant. The court also directed defendant to file a second amended petition for writ of *habeas corpus ad testificandum,* which would request that defendant be housed at the jail for a limited time, until August 14, 2001.

On August 10, 2001, defendant filed a second amended petition for writ for *habeas corpus ad testificandum,* requesting that the trial court order the Department to bring him from Big Muddy to the jail on August 11, 2001, where he would be housed until August 14, 2001, to be evaluated by Killian and for a "future hearing." That same day, the court issued an order directing the Department to house defendant at the jail from August 11, 2001, through August 14, 2001, "with custody to remain with the [Department]." The Department complied with the court's order the following day.

This interlocutory appeal followed.

## II. ANALYSIS

### A. Appellate Jurisdiction

■ Defendant concedes that this court has jurisdiction over the Department's appeal. Because the trial court's August 10, 2001, order—which required that the Department do a particular thing—had the force and effect of an injunction, the Department properly filed an interlocutory appeal under Supreme Court Rule 307(a). 188 Ill. 2d R. 307(a)(1) ("An appeal may be taken to the [a]ppellate [c]ourt from an interlocutory order of court *** granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction"); *People v. Collins,* 249 Ill. App. 3d 924, 926-27, 619 N.E.2d 871, 874 (1993) (holding

that an order directing the Department to transport an inmate to a county jail for a hearing was in the nature of an interlocutory appeal, and, thus, an interlocutory appeal under Rule 307(a) was proper).

## B. Mootness

The Department concedes that no live controversy exists because it complied with the trial court's August 10, 2001, order. However, the Department urges this court not to dismiss its appeal as moot because (1) given the short duration of this and similar orders, applying the mootness doctrine could insulate an entire class of cases from appellate review; and (2) the issue on appeal is of great public interest.

■ Illinois courts have held that when a case involves an event of short duration that is " 'capable of repetition, yet evading review,' " it may qualify for review even if it would otherwise be moot. *In re Barbara H.*, 183 Ill. 2d 482, 491, 702 N.E.2d 555, 559 (1998), quoting *In re A Minor*, 127 Ill. 2d 247, 258, 537 N.E.2d 292, 297 (1989). To receive the benefit of this exception, the complaining party must demonstrate that (1) the challenged action is too short in duration to be fully litigated prior to its cessation, and (2) a reasonable expectation exists that the same complaining party would be subjected to the same action again. *Barbara H.*, 183 Ill. 2d at 491, 702 N.E.2d at 559.

■ We agree with the Department that this case satisfies both of these requirements. Typically, challenged orders of *habeas corpus ad testificandum* will expire before appellate review can be completed, as happened here. See *People v. Ehlers*, 301 Ill. App. 3d 186, 188, 703 N.E.2d 539, 541 (1998) (noting that an order of *habeas corpus ad testificandum* usually does not last long). The trial court's August 10, 2001, order directed the Department to bring defendant to the jail on the following day, where he would remain until August 14, 2001. That period of time was far too brief to permit appellate review of the court's order. To apply the mootness doctrine under these circumstances would mean that the Department would be left without any legal recourse for challenging such orders.

The second requirement is also satisfied in this case. Although a trial court is not required to provide an independent psychiatrist to a defendant in proceedings under the Act (*People v. Trainor*, 196 Ill. 2d 318, 339, 752 N.E.2d 1055, 1067 (2001)), the court, in its discretion, may appoint a psychiatrist to evaluate the defendant (see *People v. McVeay*, 302 Ill. App. 3d 960, 964, 706 N.E.2d 539, 543 (1999) (discussing the trial court's discretion in appointing examining psychiatrists under the Act)). Given this, we conclude that it is reasonable to expect that the Department will again be faced with the same sort of order under the *habeas corpus ad testificandum* statute. We also agree with

the Department that it is reasonable to expect that in the future it will be subject to other types of orders under the *habeas corpus ad testificandum* statute (*e.g.*, an order to bring an inmate before the court to testify). See *A Minor*, 127 Ill. 2d at 259, 537 N.E.2d at 297 (to satisfy the second requirement of the mootness doctrine exception, the party need not show that the statute at issue will be applied again in precisely the same circumstances or for precisely the same reasons; instead, "[i]t is sufficient that the same statutory provision will most likely be applied in future cases involving the same party").

We thus decline to dismiss this appeal as moot. We need not address the Department's contention that the public interest of the issue on appeal also requires us to disregard the mootness doctrine.

## C. The Department's Claim That the Trial Court Erred by Entering the August 10, 2001, Order of *Habeas Corpus Ad Testificandum*

The Department argues that the trial court erred by entering the August 10, 2001, order of *habeas corpus ad testificandum*, which directed the Department to produce defendant at the jail from August 11, 2001, until August 14, 2001, for an independent psychiatric evaluation and a "future hearing." Specifically, the Department contends that the court's order did not comport with the *habeas corpus ad testificandum* statute (735 ILCS 5/10—135 (West 2000)). We agree.

■■ Because the trial court's August 10, 2001, order involved an interpretation of the *habeas corpus ad testificandum* statute (735 ILCS 5/10—135 (West 2000)), we review *de novo* the court's decision. See *In re Estate of Dierkes*, 191 Ill. 2d 326, 330, 730 N.E.2d 1101, 1103 (2000). A court's primary function in interpreting a statute is to determine and give effect to the intent of the legislature, and legislative intent is best determined by the language of the statute. *Walker v. Rogers*, 272 Ill. App. 3d 86, 90, 650 N.E.2d 272, 275 (1995). A court reading a statute should give the statutory language its plain and popularly understood meaning. *Roser v. Anderson*, 222 Ill. App. 3d 1071, 1075, 584 N.E.2d 865, 868 (1991). When a statute is unambiguous, courts must enforce it as enacted. *Philips Electronics, N.V. v. New Hampshire Insurance Co.*, 295 Ill. App. 3d 895, 904, 692 N.E.2d 1268, 1275 (1998). A court must not rewrite a statute to make it consistent with the court's idea of orderliness and public policy. *City of Springfield v. Judith Jones Dietsch Trust*, 321 Ill. App. 3d 239, 245, 746 N.E.2d 1272, 1277 (2001).

■ The Department has sole discretion in placing, handling, and transferring inmates within its control. The legislature has given the Department both the ability and power to assign inmates to any of its

facilities, and the Department has been charged with the responsibility of maintaining programs of control and rehabilitation for inmates within its facilities. 730 ILCS 5/3—2—2(1)(b), (1)(d) (West 2000). In addition, section 8 of the Act specifically grants the Director of the Department the power to place a sexually dangerous person "in any facility" of the Department set aside for the care and treatment of sexually dangerous persons. 725 ILCS 205/8 (West 2000). Except as provided by the legislature, courts may not intervene in matters that lie within the Department's discretion. *People v. Fowler*, 14 Ill. 2d 252, 259, 151 N.E.2d 324, 328 (1958); *People v. Lego*, 212 Ill. App. 3d 6, 8, 570 N.E.2d 402, 404 (1991).

■ Recognizing the Department's responsibility for placing and controlling inmates within its facilities, the legislature enacted the *habeas corpus ad testificandum* statute, which sets forth the proper procedure for bringing an inmate before the trial court (735 ILCS 5/10—135 (West 2000)). *Collins*, 249 Ill. App. 3d at 927, 619 N.E.2d at 874. That statute provides as follows:

> "The several courts having authority to grant relief by habeas corpus, may enter orders, when necessary, to bring before them any prisoner to testify, or to be surrendered in discharge of bail, or for trial upon any criminal charge lawfully pending in the same court[,] or to testify in a criminal proceeding in another state ***." 735 ILCS 5/10—135 (West 2000).

Section 10—135 thus explicitly sets forth the purposes for which a trial court may enter an order of *habeas corpus ad testificandum* to bring an inmate before the court—that is, (1) to testify, (2) to be surrendered in discharge of bail, (3) to attend the inmate's own criminal proceedings, and (4) to testify in out-of-state criminal proceedings.

■ We agree with the Department that the trial court's August 10, 2001, order, which directed that the Department house defendant at the jail from August 11, 2001, until August 14, 2001, for an evaluation by Killian and a "future hearing," did not fall within any of the statutorily enumerated purposes for entering an order of *habeas corpus ad testificandum*.

The *habeas corpus ad testificandum* statute clearly does not allow a trial court to order the Department to house an inmate at a county jail so that he may be examined locally by a psychiatrist. See *Lego*, 212 Ill. App. 3d at 8, 570 N.E.2d at 404 (holding that the *habeas corpus ad testificandum* statute did not allow for the trial court's order that an inmate be transferred for the convenience of his attorney, psychiatrist, and investigator). In so concluding, we reject defendant's argument that the trial court's order was proper under the *habeas corpus ad testificandum* statute because defendant was effectively "testifying"

when he spoke to Killian during his psychiatric evaluation. One of the purposes of the *habeas corpus ad testificandum* statute is to provide a mechanism by which a trial court can bring an inmate *before the court* to testify (735 ILCS 5/10—135 (West 2000)). Contrary to defendant's claim, his discussions with Killian at the jail simply cannot be construed as *testimony given by defendant before the trial court.*

The case on which defendant relies, *People v. Bryant*, 85 Ill. App. 3d 836, 841, 407 N.E.2d 597, 601 (1980), is inapposite. In that case, the appellate court construed the *habeas corpus ad testificandum* statute to include transfer of an inmate for participation in a lineup. The Department correctly points out that in the two decades since it was decided, no court has cited *Bryant* for its interpretation of the *habeas corpus ad testificandum* statute. Although we agree with the Department that the reasonableness of the *Bryant* court's interpretation is questionable, we need not address that issue because the trial court's order in this case—that defendant be transferred to the jail to be examined locally by a psychiatrist—went far beyond the trial court's order in *Bryant.*

In addition, we conclude that the plain language of the *habeas corpus ad testificandum* statute does not allow a trial court to order the Department to produce an inmate at a county jail to be housed until an unspecified "future" hearing. The statute was enacted to provide a mechanism by which a trial court can bring an inmate before it to, among other things, testify or attend a *scheduled* hearing in a criminal proceeding (735 ILCS 5/10—135 (West 2000)). Given the quasi-criminal nature of the proceedings under the Act (see *Trainor*, 196 Ill. 2d at 339, 752 N.E.2d at 1067 (recognizing that proceedings under the Act are civil-criminal hybrids)), the trial court certainly could have ordered that defendant be brought before it to attend a scheduled recovery hearing. However, no such hearing had been scheduled.

Further, we note that even if defendant's recovery application had been set for a hearing, the court's order of *habeas corpus ad testificandum* could only direct that the Department produce defendant *at that hearing*. It could not interfere with the Department's custody of defendant. See *Ehlers*, 301 Ill. App. 3d at 190, 703 N.E.2d at 542 (holding that a court may not enter an order of *habeas corpus ad testificandum* directing that an inmate be housed in a local facility, even for a limited time before he testifies; such an order deprives the Department of its custody of the inmate); see also *People ex rel. Lucey v. Kersten*, 269 Ill. 597, 601, 109 N.E. 1012, 1014 (1915) ("The issuance of a writ of *habeas corpus ad testificandum* does not have the effect of taking the prisoner out of the custody of the officer in whose charge he is,

and in this case it was the duty of the warden, in producing [the inmate] in answer to the writ, to retain custody of him and to return him to the penitentiary immediately upon the conclusion of his testimony").

Because the trial court's August 10, 2001, order of *habeas corpus ad testificandum*, which directed the Department to produce defendant at the jail from August 11, 2001, until August 14, 2001, for an independent psychiatric evaluation and a "future hearing," was erroneous under the *habeas corpus ad testificandum* statute (735 ILCS 5/10—135 (West 2000)), we reverse that order. Despite so holding, we concede that we appreciate the concerns which motivated the trial court's decision. However, both this court and the trial court are limited to interpreting statutes as written, and "[w]e are powerless to annex to a statute a provision or condition which the General Assembly did not see fit to impose." *People v. Garner*, 147 Ill. 2d 467, 476, 590 N.E.2d 470, 474 (1992). See *Judith Jones Dietsch Trust*, 321 Ill. App. 3d at 245, 746 N.E.2d at 1277 (a court must not rewrite a statute to make it consistent with the court's idea of orderliness and public policy).

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

KNECHT and TURNER, JJ., concur.