RAYMOND WASHINGTON, Plaintiff-Appellant, v. ROGER E. WALKER, JR., *et al.*, Defendants-Appellees.

Fourth District    No. 4—08—0006

Opinion filed May 7, 2009.

Raymond Washington, of Pinckneyville, appellant *pro se.*

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Elaine Wyder-Harshman, Assistant Attorney General, of counsel), for appellees.

JUSTICE KNECHT delivered the opinion of the court:

In April 2007, plaintiff, Raymond Washington, an inmate in the custody of the Illinois Department of Corrections (DOC), filed a *pro se*

complaint for *certiorari*. In his complaint, Washington sought an order directing defendants, Roger Walker, Director of the DOC; Sherry Benton, member of the Administrative Review Board; Bruce Fisher, chairperson of the Adjustment Committee; and Charlotte Gordon, member of the Adjustment Committee, to return him to Illinois River Correctional Center (Illinois River). Washington alleged defendants transferred him from Illinois River as a punishment for a fight and such transfer should have been reversed after the disciplinary ticket resulting from that fight had been expunged.

In June 2007, defendants Walker and Benton moved to dismiss Caldwell's petition under sections 2—615 (735 ILCS 5/2—615 (West 2006)) and 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2006)) of the Code of Civil Procedure (Code). In their motion, defendants argued Washington's complaint failed to state a claim because, in part, he was not entitled to a transfer, and Washington's claims were barred under the doctrine of *laches*.

In August 2007, the trial court dismissed Washington's petition. Washington appeals. On appeal, Washington argues his petition is not barred by the doctrine of *laches* and the disciplinary transfer should have been overturned when the disciplinary ticket was expunged. We affirm.

## I. BACKGROUND

The transfer at issue stemmed from a February 2006 incident that resulted in charges against Washington of giving false information to an employee and assaulting an inmate. The Adjustment Committee's final summary report shows Scott Books, an officer at Illinois River, provided a statement at the hearing. According to Officer Books, on February 12, 2006, he "was aggressively summoned by [inmate] Cox." Cox, who had "numerous wet areas on his shirt and was very aggravated," told Officer Books that Washington had thrown hot water on him. When Officer Books spoke to Washington, Washington told him, "It was an accident." Washington, who appeared subdued and nervous, asked Officer Books if he could "let it go." Officer Books stated Washington did not say he did not throw the water on Cox. Washington complied with Officer Books's order to leave his cell and wing. Cox remained threatening and aggressive.

In the same report, the record of proceedings indicates Washington stated he was not guilty. Washington asserted he asked that two witnesses, Alvarez, an inmate, and Lieutenant Huggins, be interviewed, but they were not. Washington identified Alvarez as a witness to the incident and Lieutenant Huggins as the first on the scene.

Regarding the incident, Washington stated Cox was lying. Cox entered his cell and used threatening language. Then, according to Washington, the following occurred:

"I said to Alverez I was going to ['']open a can of whoop ass,['] going to lift some weights. I said I was going to open some pain. He thought I was talking to Alverez. He said I went back to get my shoes on. I already had my shoes on. He said I came back and put my shoes on. I never left. I didn't want to be weak. The young man said he was not weak. I stepped to him and said he is weak because he could not tough [sic] with the iron. He stepped towards me and my coffee split [sic] on the wall. He pushed the coffee as we were face-to-face, in a Mexican standoff. Most of it hit the wall. I said I was sorry in the most expedient manner. I said I was sorry. He left out and got a broom. He [(inmate Alvarez)] never said anything about him getting the broom. He came at me. That is a weapon. He came to my cell with the broom. He came and swung the broom. He did not hit me good. The brush part hit my back and I hit the rail. I told Lt. Huggins it was an accident. I mentioned weak and looked at him. He took it derogatory. He ran out of the cell and went and got Books. Books came and got me. Books said he only had a couple of wet marks on him. In a[n] 8[-]ounce cup of coffee, I had drank [sic] most of it and got more on me than on him."

The Adjustment Committee found Washington guilty of assaulting an inmate but not guilty of giving false information to an employee. The committee based its decision on Officer Books's incident report establishing the "wet marks" on Cox's shirt and "Cox was very aggravated," and on the fact Washington "was in the area of the offense and had knowledge of the offense." The Adjustment Committee also noted this was defendant's second inmate fight; the first occurred in December 2005. The disciplinary action included one-month's C grade, one-month's segregation, and a disciplinary transfer. At some point, Washington was transferred from Illinois River to Lawrence Correctional Center (Lawrence).

Washington filed a grievance. Washington argued, in part, his witnesses had not been called before the Adjustment Committee. By report dated April 26, 2006, the Administrative Review Board determined the February 2006 disciplinary report should be expunged because it did not comply with Department Rule 504.90 (20 Ill. Adm. Code §504.90, as amended by 27 Ill. Reg. 6214, eff. May 1, 2003). The transfer, however, stood. The Director concurred in the recommendation and ordered the warden to expunge Washington's disciplinary report.

Washington filed grievances to challenge the decision upholding his transfer. At least one was returned as "previously addressed" on April 26, 2006.

In June 2006, Washington filed a complaint under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (2006)) in the United States District Court for the Central District of Illinois. In his section 1983 complaint, Washington sought damages from the defendants in this case and the warden for the alleged violation of his due-process rights when they refused to call his witnesses. Washington maintained, after his disciplinary ticket was expunged, he should have been transferred back to Illinois River, a level 3 prison. Instead, Washington remained at Lawrence under a "disciplinary transfer." Washington asserted, because of the refusal to correct the transfer, he lost a number of amenities, including the use of free weights, living close to his mother, dayroom privileges, the ability to use the commissary, the opportunity to shower or clean his cell each day, access to cleaning supplies, a bed with springs, and access to athletic fields, water fountains, yard privileges, and various tournaments.

On October 16, 2006, the district court dismissed Washington's due-process claim. *Washington v. Walker*, No. 06—1159 (C.D. Ill. October 16, 2006) (dismissal order). The court held the alleged due-process violations had been cured when the disciplinary ticket was expunged. The court further held inmates did not have a constitutionally protected interest in avoiding transfer from one prison to another. Washington moved for reconsideration. This motion was denied on April 23, 2007.

While the motion to reconsider the dismissal of his section 1983 claim was pending, Washington filed his *pro se* complaint for *certiorari* in the Sangamon County circuit court. Washington requested the court order defendants to return him to Illinois River, a level 3 prison, from Lawrence, a level 2 prison, "after his conviction of disciplinary charges was overturned on [April 26, 2006]." Washington further asserted his state action was timely because the limitation period was tolled during the federal litigation.

In June 2007, defendants Walker and Benton moved to dismiss Washington's petition under sections 2—619 (735 ILCS 5/2—619 (West 2006)) and 2—615 (735 ILCS 5/2—615 (West 2006)) of the Code. Defendants argued Washington was not entitled to a transfer, the complaint was barred by *laches*, and Washington's complaint failed to state a cause of action for *certiorari*.

In August 2007, the circuit court granted the motion to dismiss. In September 2007, Washington moved to reconsider. In support of his motion for reconsideration, Washington averred Benton was "out to get him." In addition, he submitted a purported affidavit by DeAndre Cherry, which was not notarized. Cherry stated the following:

"I received [an] I.D.R. [(inmate disciplinary report)] on 6/30/04. The charges were 301 Fighting, 303 Giving False Information, 307 Unauthorized Movement. I was found guilty and as a discipline ruling, I was demoted to C grade 3 months, segregation 1 month, and a disciplinary transfer. I was transfer[red] to Western Corr. Ctr. (A level 2 institution). I was in Jacksonville Corr. Ctr. at the time these fra[u]dulent charges were imposed (A level 5 institution). I filed a grievance and Sherry Hite of the A.R.B. requested the I.D.R. to be expunged from my master file. Shortly after expungment [sic] I was transfer[red] back to a level 5 institution. This is a common practice for the I.D.O.C. after expungment [sic]."

In December 2007, the trial court denied Washington's motion to reconsider. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The motion to dismiss sought a dismissal of Washington's complaint under sections 2—615 (735 ILCS 5/2—615 (West 2006)) and 2—619(a)(9) (735 ILCS 5/2—619(a)(9) (West 2006)) of the Code. When a dismissal under either section is appealed, we review the dismissal *de novo*. See *Malcome v. Toledo, Peoria & Western Ry. Corp.*, 349 Ill. App. 3d 1005, 1006, 811 N.E.2d 1199, 1201 (2004) (section 2—615); *Saichek v. Lupa*, 204 Ill. 2d 127, 134, 787 N.E.2d 827, 832 (2003) (section 2—619).

### B. *Laches*

On appeal, Washington first argues his complaint is not barred under the doctrine of *laches*. We note the *laches* doctrine applies to both petitions for *mandamus* and writs of *certiorari*. *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739, 791 N.E.2d 666, 671 (2003). In this case, Washington filed a document entitled "Common-Law Writ of Certiorary [sic]." Walker and Benton argue, given the relief sought by Washington, the document is actually a petition for *mandamus*. Because the *laches* doctrine applies to both types of petitions, the label is irrelevant.

■ To establish the doctrine of *laches* applies, the party seeking its application must generally prove two elements: (1) the petitioner lacked due diligence in bringing his or her claim; and (2) the party asserting *laches* was thereby prejudiced. *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. The first element is established when it is shown "more than six months elapsed between the accrual of the cause of action and the filing of the petition, unless the plaintiff provides a reasonable excuse for the delay." *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671.

■ Here, almost one year separated the April 26, 2006, decision of the Administrative Review Board and the April 16, 2007, filing of the complaint for writ of *certiorari*. Washington, citing *Alicea v. Snyder*, 321 Ill. App. 3d 248, 748 N.E.2d 285 (2001), argues the first element is not established because he had a reasonable excuse for the delay: his federal case was pending. Washington, however, misreads *Alicea*. In *Alicea*, this court refused to find the statute of limitations for a *certiorari* claim was tolled by a federal section 1983 action. *Alicea*, 321 Ill. App. 3d at 254, 748 N.E.2d at 290. In other words, waiting for a decision in a pending federal action is not a reasonable excuse for not filing a state action. See *Ashley*, 339 Ill. App. 3d at 740, 791 N.E.2d at 672 (concluding the "decision to pursue federal relief does not justify *** delay in bringing [the state] proceedings").

All of the remaining cases Washington relies upon to show his delay was reasonable are distinguishable. None involved a state prisoner seeking relief from a disciplinary action in a federal court. See *People ex rel. Casey v. Health & Hospitals Governing Comm'n*, 69 Ill. 2d 108, 370 N.E.2d 499 (1977); *People ex rel. Jaworski v. Jenkins*, 56 Ill. App. 3d 1028, 372 N.E.2d 881 (1978); *Murphy v. Rochford*, 55 Ill. App. 3d 695, 371 N.E.2d 260 (1977); *Monroe v. Civil Service Comm'n*, 55 Ill. App. 2d 354, 204 N.E.2d 486 (1965). The first element of the *laches* doctrine thus applies.

As to the second element of the *laches* doctrine, Washington maintains defendants Walker and Benton have not shown they were prejudiced by his delay. Washington also contends to determine prejudice is inherent in prisoner claims reduces the *laches* doctrine to a statute of limitations.

This court, in *Ashley*, held prejudice is inherent "in cases where inmates file petitions for writs of *mandamus* more than six months after the completion of the original DOC disciplinary proceedings and no reasonable excuse exists for the delay." *Ashley*, 339 Ill. App. 3d at 739, 791 N.E.2d at 671. We noted the "DOC houses over 42,000 adult inmates who have little disincentive to litigate over disciplinary proceedings." *Ashley*, 339 Ill. App. 3d at 739-40, 791 N.E.2d at 671. We further quoted *Alicea*:

" 'DOC conducts a large number of disciplinary proceedings every year, and the administrative expense and burden of conducting reviews so long after the completion of the original proceedings would be substantial. Such an inquiry would result in extensive public detriment and inconvenience.' " *Ashley*, 339 Ill. App. 3d at 740, 791 N.E.2d at 672, quoting *Alicea*, 321 Ill. App. 3d at 254, 748 N.E.2d at 290.

Washington argues we should not apply the presumption here. Washington distinguishes *Alicea* by arguing it involved a four-year delay (see *Alicea*, 321 Ill. App. 3d at 254, 748 N.E.2d at 290), and Washington maintains defendants cannot show detriment or inconvenience because they exhibited knowledge of his cause and had the ability to gather and present evidence.

We disagree. This case does not simply involve the issue of whether the expungement of a disciplinary ticket somehow requires the resulting disciplinary transfer be overturned. This case involves not one, but three transfer decisions. These decisions are solely within DOC's discretion and transfers can be made for any reason, including security and administrative purposes. To determine the viability of any reasons provided, witnesses would have to be interviewed regarding the reasons for the transfer and supporting documents would have to be found and gathered. Washington would have the ability to try to dispute any reasons given, potentially resulting in additional witnesses. Given Washington's delay, evidence, including witnesses, may be more difficult to find and the costs, as referenced in *Alicea*, could be substantial. Washington has not rebutted the presumption of prejudice.

Following *Ashley*, we find prejudice is presumed. Because both elements of the *laches* doctrine are present, the doctrine of *laches* bars Washington's claim.

## C. Failure To State a Claim

■ Even if Washington's complaint was not barred under the *laches* doctrine, we would affirm the dismissal because the complaint failed to state a claim. On appeals from section 2—615 dismissals, we will affirm only when, upon considering the allegations in the light most favorable to the nonmovant, it is clear no set of facts can be proved to entitle the nonmovant to relief. *Malcome*, 349 Ill. App. 3d at 1006, 811 N.E.2d at 1201.

In this case, Washington has not alleged facts to prove he is entitled to relief. Inmates do not have a constitutionally protected interest in avoiding a transfer. *Meachum v. Fano*, 427 U.S. 215, 225, 49 L. Ed. 2d 451, 459, 96 S. Ct. 2532, 2538 (1976) ("[t]hat life in one prison is much more disagreeable than in another does not in itself signify that a [f]ourteenth [a]mendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules"). Transfers may be made for any combination of reasons, including for administrative or disciplinary purposes. *Meachum*, 427 U.S. at 225, 49 L. Ed. 2d at 459, 96 S. Ct. at 2538. In this case, while the initial transfer was disciplinary and the disciplinary ticket was

expunged, DOC was not limited in its ability to transfer or not transfer Washington. See 20 Ill. Adm. Code §504.80(k)(5), as amended by 27 Ill. Reg. 6234, eff. May 1, 2003. We will not interfere with the transfer decisions, which are within DOC's discretion. See *People v. Lego*, 212 Ill. App. 3d 6, 8, 570 N.E.2d 402, 404 (1991) ("[c]ourts are not to intervene in matters within the discretion of [DOC], including the location where inmates are assigned and housed").

Cherry's affidavit does not create a claim. First, it is not attached to the complaint and is, therefore, not part of the complaint. Second, Cherry avers the reversal of disciplinary transfers is a "common practice" when disciplinary tickets upon which they are based are expunged. We presume Cherry bases this assertion on his own experience. However, the term "common practice" indicates this practice is not universal and has not removed the DOC's discretion in this matter.

Moreover, we note we disagree Washington has a reasonable expectation he would not be transferred for disciplinary reasons based on part 504 of the Administrative Code (20 Ill. Adm. Code part 504, as amended by 27 Ill. Reg. 6214-24, eff. May 1, 2003). While we agree with Washington section 503.140, entitled "Disciplinary Transfers," states "[t]ransfers may be recommended by the Adjustment Committee pursuant to a finding of guilt of an infraction in accordance with 20 Ill. Adm. Code 504" (20 Ill. Adm. Code §503.140 (1996)), the Administrative Code does not create a reasonable expectation Washington will not be transferred even if his disciplinary ticket was expunged. Subsection 504.80(k)(5), which is in the same section that grants the adjustment committee authority to recommend a disciplinary transfer upon a finding of guilt, removes any such expectation: "This Part shall in no way be construed to restrict or limit the Department's ability to *** transfer the offender to another facility." 20 Ill. Adm. Code §504.80(k)(5), as amended by 27 Ill. Reg. 6234, eff. May 1, 2003.

### D. *Res Judicata*

■ Walker and Benton argue on appeal Washington's claims are barred under the doctrine of *res judicata*. We note this argument was not raised in the trial court and defendants cited no authority to establish the federal court, when considering Washington's section 1983 claims, would have had subject-matter jurisdiction for the relief sought in this action. We need not, however, consider the *res judicata* argument because we have already determined the trial court properly dismissed Washington's petition as barred under the doctrine of *laches* and for failure to state a claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the order dismissing Washington's complaint.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.