NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190531-U

NO. 4-19-0531

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 15, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DANIEL P. MUELLER, | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| KAYLA A. CARTER, | ) | No. 17F434 |
|     Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Matthew Maurer, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: Petitioner failed to present a complete record for review from the trial court's denial of his motion for parenting time with his minor child and the court's judgment is affirmed.

¶ 2    Petitioner, Daniel P. Mueller, an inmate in the Illinois Department of Corrections (DOC), appeals from the trial court's denial of his "motion for visitation" with his minor child in the underlying parentage proceeding. On appeal, he argues the court erred by (1) denying his petition for a writ of *habeas corpus ad testificandum*, seeking an order requiring DOC to bring him before the court to testify; (2) denying his motion for the appointment of a guardian *ad litem* (GAL) to represent the minor child's interests; (3) failing to interview the minor child *in camera*; (4) denying him parenting time with the minor child; and (5) denying his request for free hearing transcripts. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          Petitioner and respondent, Kayla A. Carter, are the parents of T.C., born January 29, 2010. In December 2012, petitioner was incarcerated on pending criminal charges. Currently, he is serving a 30-year prison sentence for first-degree murder.

¶ 5          In May 2017, petitioner *pro se* filed a petition to establish parentage of T.C. He named himself and respondent as T.C.'s parents, alleged that T.C. resided with respondent, and asserted that there had been no previous finding or declaration of his paternity. Both petitioner and respondent were self-represented during the entirety of the underlying proceedings.

¶ 6          In September 2017, petitioner filed a petition for writ of *habeas corpus ad testificandum*, asking the trial court to enter an order directing DOC to have him brought before the court to testify. He did not specify a date he desired to appear in court. Petitioner also filed a "motion for visitation," alleging he had been denied visitation with T.C. since December 2012, that visitations could occur at the correctional facility where he was imprisoned, maintaining contact with petitioner was in T.C.'s best interests, and that the denial of visitation was damaging to T.C.'s mental and emotional health. Petitioner asked the court to order respondent to transport T.C. to visit him in prison twice a month, provide him with pictures of and letters about T.C. once a month, and inform him of T.C.'s "welfare, academic progress, and current address *** at least once a month."

¶ 7          In October 2017, petitioner filed a motion seeking the appointment of a GAL to represent T.C.'s interests. He alleged he had attempted communication with T.C. but been denied all contact. Petitioner asserted that the appointment of a GAL to represent T.C.'s interests was "necessary and appropriate *** to help avoid the potential for vindictiveness, manipulation[,] and

coercion of [T.C.] by any *** party in [the] action."

¶ 8         Relevant to this appeal, the trial court conducted hearings on petitioner's various motions on April 19, May 24, and July 8, 2019. The record does not contain transcripts of any of the hearings. However, the court's docket entries show that petitioner was present for each hearing by telephone and that respondent appeared in person. The docket entry for April 19, 2019, reflects that, following admissions by the parties, the court "establishe[d] [p]etitioner's paternity of [T.C.]" It also denied petitioner's writ of *habeas corpus ad testificandum*, set the matter for further hearing, and stated petitioner "may participate by telephone." On May 24, 2019, the court heard and denied petitioner's motion for the appointment of a GAL. Finally, on July 8, 2019, the court conducted a hearing on petitioner's "motion for visitation." The court's docket entry states witnesses were sworn and evidence was presented. It shows that the court denied the motion and awarded respondent sole decision-making authority over T.C. The court's docket entry further reflects that petitioner made a "request for a free transcript," which the court also denied.

¶ 9         On July 9, 2019, the trial court filed a "Parental Responsibility Order," in which it set forth its factual findings and the factors it considered when rendering its decision as to the allocation of decision-making responsibilities over T.C. and the issue of petitioner's visitation, *i.e.*, parenting time. The court's decision states as follows:

> "[T]he court specifically finds [T.C.] has not seen or heard from his father since he was one year old. He has not had any relationship or interaction with his father in 8 1/2 years. [Petitioner] was abusive to [respondent] in the presence of [T.C.] When [petitioner] showed up for parenting time after the party [*sic*] separation[,] he would usually be intoxicated and [respondent] would deny the parenting time. [Petitioner]

- 3 -

is serving a 30[-]year sentence for first-degree murder. [T.C.] is unaware that his father is incarcerated. [T.C.] is happy and actively involved in extracurricular activities. [Respondent] stated [T.C.] has a relationship with an individual he sees as a father figure. [Respondent] stated that [T.C.] does not ask or inquire about his father. She believes it would be harmful for him to learn that his father is incarcerated and will be there for approximately the next 23 years.

The court denies [petitioner's] request for parenting time with [T.C.] The court believes that any parenting time with [petitioner] would be harmful to the minor child and not in his best interests."

¶ 10     This appeal followed.

¶ 11                              II. ANALYSIS

¶ 12                     A. Accelerated Appeal Filing Deadline

¶ 13     Initially, we note that this is an accelerated appeal under Illinois Supreme Court Rule 311 (eff. July 1, 2018). Under that rule, this court is required to issue its decision in an accelerated case within 150 days after the filing of the notice of appeal unless there has been "good cause shown." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, petitioner's notice of appeal was filed on July 26, 2019, and this court's disposition was due to be filed by December 23, 2019. That filing deadline has passed. However, we note that petitioner filed numerous motions with this court on appeal. Significantly, he was granted three extensions of time to file his appellant's brief. Ultimately, petitioner's brief was filed on December 18, 2019, only days before this court's filing deadline. Respondent was then given the opportunity to file an appellee's brief, which she ultimately elected not to do. Based upon these circumstances, we believe there is "good cause" for

issuing our disposition in this case after the 150-day deadline.

¶ 14                         B. Incomplete Record and Petitioner's Request for Free Transcripts

¶ 15        A second preliminary matter that we must address on appeal concerns petitioner's failure to provide a complete record of the underlying proceedings for review.

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984).

¶ 16        As stated, the appellate record does not contain transcripts of any pertinent hearing before the trial court. On appeal, petitioner argues he could not afford the cost of hearing transcripts and, as a result, the trial court should have granted his request for free transcripts. Alternatively, he argues that given the accelerated nature of his appeal, the trial court "abused its discretion" by failing to ensure that hearing transcripts were prepared and transmitted to the appellate court without advance payment.

¶ 17        First, petitioner does not cite any authority to support his alleged entitlement to free hearing transcripts. We note that in lieu of presenting a hearing transcript, an appellant may present a bystander's report, or the parties may submit an agreed-upon statement of facts. Ill. S. Ct. R. 323(c), (d) (July 1, 2017). In civil cases, "where a verbatim transcript is not obtainable because of [the] appellant's inability to pay for it, a bystander's report of proceedings could, and should be substituted." *Hall v. Turney*, 56 Ill. App. 3d 644, 649, 371 N.E.2d 1177, 1181 (1977).

¶ 18          Second, to support his assertion that the trial court acted improperly by failing to ensure that hearing transcripts were prepared and submitted, petitioner cites Illinois Supreme Court Rule 311 (eff. July 1, 2018), which, as stated, sets forth procedures applicable to accelerated cases. That rule provides as follows:

> "The record on appeal and the transcript of proceedings in a child custody or allocation of parental responsibilities case shall be filed in the Appellate Court no later than 35 days after the filing of the notice of appeal ***. Any request for extension of the time for filing shall be accompanied by an affidavit of the court clerk or court reporting personnel stating the reason for the delay, and shall be served on the trial judge and the chief judge of the circuit. *Lack of advance payment shall not be a reason for noncompliance with filing deadlines for the record or transcript.* Any subsequent request for continuance shall be made to the appellate court on motion with notice to all parties in accordance with rules." (Emphasis added.) Ill. S. Ct. R. 311(a)(4) (eff. July 1, 2018).

¶ 19          Although Rule 311(a)(4) does provide that the lack of advance payment will not excuse compliance with filing deadlines for hearing transcripts, it does not set forth any obligations or duties on the part of the trial court. Instead, for a hearing transcript to be included within the appellate record, an appellant must "make a written request to the court reporting personnel *** to prepare a transcript of the proceedings that [the] appellant wishes included in the report of proceedings." Ill. S. Ct. R. 323(a) (eff. July 1, 2017).  The court reporting personnel then prepares the requested transcript and files it with the clerk of the circuit court. Ill. S. Ct. R. 323(b) (eff. July 1, 2017). In this case, petitioner has not asserted that he made a proper request for hearing

- 6 -

transcripts from court reporting personnel pursuant to Rule 323, nor does the record reflect any such request.

¶ 20 Here, as the appellant, petitioner had the burden of presenting a complete record for review. However, he failed to present transcripts for any pertinent hearing in his case; avail himself of an acceptable alternative to the presentation of transcripts, such as a bystander's report; establish an entitlement to free transcripts; or demonstrate that he made any proper request for transcripts from court reporting personnel. Accordingly, any doubts arising from the lack of the hearing transcripts in this case will be resolved against him.

¶ 21 C. Petition for Writ of *Habeas Corpus Ad Testificandum*

¶ 22 On appeal, petitioner challenges the trial court's denial of his petition for writ of *habeas corpus ad testificandum*. He contends the court erred by denying his petition without allowing him to present any supporting argument. Petitioner also maintains that the court's ruling, which prevented him from appearing personally before the court and resulted in his participation only by telephone, put him at a "distinct disadvantage" and "caused him severe prejudice."

¶ 23 Section 10-135 of the Code of Civil Procedure (735 ILCS 5/10-135 (West 2016)) authorizes the trial court to enter an order of *habeas corpus ad testificandum* to bring an inmate before the court to testify. *People v. Freed*, 328 Ill. App. 3d 459, 466, 766 N.E.2d 253, 259 (2002). "The decision whether to grant a prisoner reprieve from his imprisonment and allow him to personally appear in a civil proceeding is within the trial court's discretion." *Beahringer v. Roberts*, 334 Ill. App. 3d 622, 629, 776 N.E.2d 247, 254 (2002).

¶ 24 Here, petitioner sought an order of *habeas corpus ad testificandum* so that he could attend some unspecified proceeding before the court and testify. During a hearing in April 2019,

which petitioner attended by telephone, the trial court denied his request. Because there is no transcript of that particular hearing, the record does not reflect what occurred at the hearing in relation to the petition, whether petitioner sought to argue his petition and was refused, or the court's rationale for its denial of the petition.

¶ 25        As expressed above, because petitioner had the burden of presenting a complete record, we resolve any doubts arising from the lack of a hearing transcript against him and presume that the trial court's denial of his petition for a writ of *habeas corpus ad testificandum* was in conformity with the law. Additionally, we note that the record does show that petitioner was present by telephone for each hearing. With respect to the hearing on his "motion for visitation" the record reflects he testified on his own behalf and presented evidence, including exhibits, to the court. Under these circumstances, we find no abuse of discretion by the court.

¶ 26                        D. Motion for the Appointment of a GAL

¶ 27        On appeal, petitioner next argues the trial court abused its discretion by denying his motion for the appointment of a GAL to represent T.C.'s interests. He asserts respondent had "been maliciously and vindictively keeping" T.C. from him and, because she and T.C. had conflicting interests, the appointment of a GAL was necessary to protect T.C.'s legal rights.

¶ 28        The Illinois Parentage Act of 2015 (Parentage Act) provides for the appointment of a GAL to represent a minor if "the court finds that the interests of the child are not adequately represented." 750 ILCS 46/613(b) (West 2016). Additionally, under the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act), the trial court may, on its own motion or the motion of a party, appoint an attorney to serve as a minor's GAL "[i]n any proceedings involving the support, custody, visitation, allocation of parental responsibilities, education, parentage, property

interest, or general welfare of a minor or dependent child[.]" 750 ILCS 5/506(a) (West 2016). A trial court's failure to appoint a GAL is reviewed for an abuse of discretion. *In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 182, 768 N.E.2d 834, 841 (2002).

¶ 29   Here, in May 2019, the trial court conducted a hearing on petitioner's motion for the appointment of a GAL and denied the motion. Because petitioner failed to provide a complete record of the underlying proceedings, the record, again, does not show the arguments presented to the court or the rationale for its decision. Accordingly, petitioner cannot demonstrate error and we must presume the court properly denied the motion.

¶ 30   E. The Trial Court's Failure to Interview T.C.

¶ 31   Petitioner next argues the trial court erred by failing to conduct an *in camera* interview of T.C. He asserts T.C.'s preferences regarding parenting time should not have been overlooked and contends that interviewing T.C. would have "greatly aided the trial court" and resulted in a different outcome.

¶ 32   The trial court may interview a minor in chambers to ascertain his or her wishes as to the allocation of parental responsibilities. 750 ILCS 5/604.10(a) (West 2016). "[T]he standard of review on the decision to conduct an *in camera* interview is abuse of discretion." *In re Marriage of Bates*, 212 Ill. 2d 489, 522, 819 N.E.2d 714, 732 (2004).

¶ 33   Here, the record fails to reflect that either party sought an *in camera* interview of T.C. or to have his testimony presented to the trial court in any capacity. Additionally, in its written order, the court found "nothing to suggest that [T.C.] ha[d] the maturity or ability to express reasoned and independent preferences as to *** parenting time." The record contains nothing to contradict the court's finding and we find no abuse of its discretion from the lack of an *in camera*

interview.

¶ 34                                  F. Parenting Time

¶ 35        Finally, petitioner argues the trial court erred by denying his request for parenting time with T.C. He contends that maintaining a relationship with him is in T.C.'s best interest.

¶ 36        Under the Parentage Act, the trial court applies standards set forth in the Dissolution Act when allocating parenting time. 750 ILCS 46/802(a) (West 2016). According to the Dissolution Act, the court must "allocate parenting time according to the child's best interests." 750 ILCS 5/602.7(a) (West 2016). When determining the child's best interests, the court is required to consider all relevant factors, including the following:

"(1) the wishes of each parent seeking parenting time;

(2) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to parenting time;

(3) the amount of time each parent spent performing caretaking functions with respect to the child in the 24 months preceding the filing of any petition for allocation of parental responsibilities or, if the child is under 2 years of age, since the child's birth;

(4) any prior agreement or course of conduct between the parents relating to caretaking functions with respect to the child;

(5) the interaction and interrelationship of the child with his or her parents and siblings and with any other person who may significantly affect the child's best interests;

(6) the child's adjustment to his or her home, school, and community;

(7) the mental and physical health of all individuals involved;

(8) the child's needs;

(9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

(10) whether a restriction on parenting time is appropriate;

(11) the physical violence or threat of physical violence by the child's parent directed against the child or other member of the child's household;

(12) the willingness and ability of each parent to place the needs of the child ahead of his or her own needs;

(13) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

(14) the occurrence of abuse against the child or other member of the child's household;

(15) whether one of the parents is a convicted sex offender or lives with a convicted sex offender ***;

(16) the terms of a parent's military family-care plan ***; and

(17) any other factor that the court expressly finds to be relevant." *Id.* § 602.7(b).

¶ 37        Additionally, a court may restrict parenting time if, following a hearing, it "finds by a preponderance of the evidence that a parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." 750 ILCS 5/603.10 (West 2016). On review, the trial court's decision will not be

overturned "unless the court abused its considerable discretion or its decision is against the manifest weight of the evidence." *In re Marriage of Whitehead*, 2018 IL App (5th) 170380, ¶ 15, 97 N.E.3d 566.

¶ 38　　　　Once again, review of this issue is hampered by petitioner's failure to provide a complete record of the underlying proceedings. The record shows that in July 2019, the trial court conducted a hearing on petitioner's request for "visitation," *i.e.* parenting time, with T.C. The court's docket entry reflects that witnesses were sworn and evidence was presented. Because petitioner presented no transcript of the hearing or bystander's report, we cannot fully review the evidence presented at those proceedings and petitioner is unable to support his arguments on appeal with citations to the evidence he believes supports his claims.

¶ 39　　　　In its written order, the trial court did summarize the evidence presented by the parties and set forth specific findings as to each statutory factor. Ultimately, the court denied petitioner's request for parenting time, finding a restriction on petitioner's parenting time was warranted under section 603.10 of the Dissolution Act and that parenting time with petitioner was not in T.C.'s best interest. On this record, petitioner is unable to demonstrate error in the trial court's factual findings and the record presented does not show an abuse of discretion.

¶ 40　　　　Additionally, we note that in arguing error on appeal, petitioner relies heavily on the Second District's decision in *Frail v. Frail*, 54 Ill. App. 3d 1013, 370 N.E.2d 303 (1977), for the proposition that a parent should be deprived of visitation in only very extreme circumstances. In that case, the court determined it was in the minor children's best interests to visit their mother in prison. *Id.* at 1015. In so holding, the court relied, in part, on an established "strong parent-child relationship" between the mother and her children. *Id.* Here, the court's written order reflects

findings of the *lack* of any significant parent-child relationship between petitioner and T.C. In particular, the court determined that T.C. had not seen petitioner since he was one year old and that there had been no interaction between the two in eight and a half years. Thus, the facts as found by the trial court in this case, which petitioner is unable to contradict due to the incomplete record, are clearly distinguishable from those presented in *Frail*.

¶ 41                                III. CONCLUSION

¶ 42          For the reasons stated, we affirm the trial court's judgment.

¶ 43          Affirmed.